FOR PUBLICATION

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

SECURITIES AND EXCHANGE
COMMISSION,
*Plaintiff-Appellee*,

and

HEART TRONICS, INC., WILLIE
JAMES GAULT,
*Defendant-Appellee*,

v.

MITCHELL JAY STEIN,
*Defendant-Appellant.*

No. 15-55506

D.C. No.
8:11-cv-01962-
JVS-AN

OPINION

Appeal from the United States District Court
for the Central District of California
James V. Selna, District Judge, Presiding

Argued and Submitted March 13, 2018
San Francisco, California

Filed October 11, 2018

Before: J. Clifford Wallace, Marsha S. Berzon,
and Consuelo M. Callahan, Circuit Judges.

Opinion by Judge Wallace

# SUMMARY[*]

## Securities Law

The panel affirmed the district court's summary judgment in favor of the Securities and Exchange Commission ("SEC") on the SEC's claims that Mitchell Stein violated various federal securities laws.

The SEC brought a civil enforcement action against Stein, alleging that while he acted as purported outside counsel to co-defendant Heart Tronics, he engaged in a series of frauds designed to inflate the company's stock price so that he could profit from selling its securities to investors. Concurrently with the SEC's case, the Department of Justice brought a criminal case, charging Stein with fourteen counts for the same fraudulent conduct; and Stein was convicted on all counts.

The panel held that Stein's criminal conviction conclusively established all of the facts the SEC was required to prove with respect to the specified securities fraud claims. First, both the criminal and civil case involved the same fraudulent scheme carried out by Stein. Second, the SEC's securities fraud claims involved "the application of the same rule of law" as that involved in the criminal case. Finally, pretrial preparation and discovery related to the criminal proceeding could "reasonably be expected" to have embraced the issues sought to be presented in the SEC's civil case. The panel concluded that the district court did not err

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

in entering summary judgment based on the preclusive effect of Stein's conviction.

The panel rejected Stein's arguments against the application of issue preclusion. The panel held that the district court did not abuse its discretion in denying Stein's request for a continuance pending further discovery. Finally, the panel held that the district court did not err in denying Stein's motion for summary adjudication.

## COUNSEL

Robert O. Saunooke (argued), Saunooke Law Firm PA, Miramar, Florida, for Defendant-Appellant.

Allan A. Capute (argued), Special Counsel to the Solicitor; John B. Capehart, Attorney; Jacob H. Stillman, Senior Advisor to the Solicitor; John W. Avery, Deputy Solicitor; Robert B. Stebbins, General Counsel; Securities and Exchange Commission, Washington, D.C.; for Plaintiff-Appellee.

## OPINION

WALLACE, Circuit Judge:

Mitchell Stein, an attorney, appeals from the district court's summary judgment in favor of the Securities and Exchange Commission (SEC) on the SEC's claims that Stein violated various federal securities laws. The district court entered summary judgment on six of the SEC's claims on the ground that Stein's prior criminal conviction precluded

him from contesting the allegations at issue in the civil case. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

## I.

In December 2011, the SEC brought a civil enforcement action against Stein alleging that Stein, while acting as purported outside counsel to co-defendant Heart Tronics, engaged in a series of frauds designed to inflate the company's stock price so that he could profit from selling its securities to investors. The alleged scheme was wide ranging, but centered on allegations that Stein concocted three false purchase orders with fictitious companies, and used these orders as the basis for SEC filings and press releases touting bogus sales of Heart Tronics' "Fidelity 100" heart-monitoring system.

The purchase orders at issue ostensibly were agreed to during September and October 2007. The first purchase order reflected a sale of 180 units of the Fidelity 100 for $1.98 million. The SEC alleges that an individual later identified as Thomas Tribou signed the purchase order and sent Heart Tronics $50,000 as a deposit. However, the copy of the order that was counter-signed by the then-CEO of Heart Tronics and returned to Tribou identified the customer as "Cardiac Hospital Management" (CHM). The SEC maintained that CHM was a fictitious entity not known to Tribou. The second and third purchase orders reflected sales to a fictional Israeli company called "IT Healthcare" for $3.3 million and $564,000, respectively.

Stein went to great lengths to make the purchase orders appear legitimate. Specifically, the SEC alleges that Stein and his personal assistant, co-defendant Martin Carter, created letters and documents purportedly originating from CHM and IT Healthcare to create the appearance of

communication between Heart Tronics and its "customers." One such letter was from a purported CHM purchasing agent named "Toni Nonoy" asking for products to be sent to a "new address" in Japan. Other documents were from fictitious people supposedly affiliated with IT Healthcare confirming sales orders and providing updated shipping instructions. The SEC alleges that all these documents were fraudulent and that Stein simply made up the names.

During the same period in which Stein drew up the alleged fraudulent purchase orders, he also orchestrated the dissemination of press releases reporting the sales. The SEC alleges that based on information provided by Stein, John Woodbury, Heart Tronics' securities lawyer, published three press releases touting the more than $5 million in purported sales to CHM and IT Healthcare. The SEC also alleged that Stein caused the fraudulent sales orders to be incorporated into Heart Tronics' SEC filings from approximately September 2007 through August 2008.

Based on these and other allegations, the SEC asserted various claims against Stein, including securities fraud in violation of Section 10(b) of the Securities Exchange Act (Exchange Act), Exchange Act Rule 10b-5, and Section 17(a) of the Securities Act; aiding and abetting violations of Section 10(b) and Rule 10b-5; selling or offering for sale unregistered securities in violation of Section 5(a) and 5(c) of the Securities Act; falsifying books and records in violation of Exchange Act Rule 13b2-1; knowingly falsifying books and records in violation of Section 13(b)(5) of the Exchange Act; and aiding and abetting Heart Tronics' violations of the reporting, record-keeping, and internal controls provisions of the Exchange Act (Sections 13(a), 13(b)(2)(A), and 13(b)(2)(B)) and Exchange Act Rules (Rules 13a-1, 13a-11, 13a-13, and 12b-20).

Concurrent with the SEC's case against Stein, the Department of Justice (DOJ) filed a criminal case against him in the Southern District of Florida arising out of the same fraudulent conduct alleged in the civil case. The fourteen-count indictment charged Stein with three counts of securities fraud (18 U.S.C. § 1348), three counts of wire fraud (18 U.S.C. § 1343), three counts of mail fraud (18 U.S.C. § 1341), one count of conspiracy to commit mail and wire fraud (18 U.S.C. § 1349), three counts of money laundering (18 U.S.C. § 1957), and one count of conspiracy to obstruct justice (18 U.S.C. § 371). The DOJ eventually moved to intervene and stay discovery in the SEC action pending the outcome of the criminal proceeding. The district court granted the unopposed motion and stayed the civil case in April 2012.

The DOJ's case against Stein tracked the main allegations asserted in the SEC's complaint. During a two-week trial, the DOJ presented evidence that Stein created three fraudulent purchase orders for CHM and IT Healthcare; that he orchestrated the publication of press releases touting the fraudulent purchase orders; that he made up documents purported to be from employees of CHM and IT Healthcare to create the impression the purchase orders were legitimate; and that he caused the false information to be incorporated into Heart Tronics' SEC filings. During closing arguments, the prosecution focused the jury's attention on the "false purchase orders," "false press releases," and "false SEC filings" that underpinned Stein's scheme. At the end of trial, the jury returned guilty verdicts against Stein on all counts. The district court sentenced Stein to 17 years' imprisonment, and ordered him to forfeit over $5 million and pay over $13 million in restitution.

Stein appealed from his judgment of conviction and sentence, arguing, among other things, that the DOJ failed to produce material, exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), and that the DOJ knowingly relied on false testimony in violation of *Giglio v. United States*, 405 U.S. 150 (1972). The Eleventh Circuit rejected the *Brady* and *Giglio* claims, affirmed Stein's conviction, but vacated and remanded Stein's sentence for a recalculation of actual losses attributable to his fraud. *See United States v. Stein*, 846 F.3d 1135 (11th Cir. 2017).

Following Stein's conviction, the SEC moved for summary judgment, arguing that Stein's conviction precluded him from contesting the SEC's allegations in the civil proceeding. The district court concluded that Stein's criminal conviction "necessarily decided" the facts needed to establish his liability in the civil case, and entered summary judgment in favor of the SEC on the following claims: securities fraud in violation of Section 10(b) of the Exchange Act, Exchange Act Rule 10b-5, and Section 17(a) of the Securities Act; aiding and abetting violations of Section 10(b) and Rule 10b-5; falsifying books and records in violation of Exchange Act Rule 13b2-1; knowingly falsifying books and records in violation of Section 13(b)(5) of the Exchange Act; and aiding and abetting Heart Tronics' violations of the reporting and internal controls requirements of the Exchange Act and Exchange Act Rules. This appeal followed.

II.

We review a district court's summary judgment de novo. *Branch Banking & Trust Co. v. D.M.S.I., LLC*, 871 F.3d 751, 759 (9th Cir. 2017). We also review de novo whether issue preclusion is available. *Dias v. Elique*, 436 F.3d 1125, 1128 (9th Cir. 2006). If issue preclusion is available, the district

court's decision to apply the doctrine is reviewed for abuse of discretion. *Id.*

## III.

Issue preclusion bars parties from relitigating an issue if the same issue was adjudicated in prior litigation. *Resolution Tr. Corp. v. Keating*, 186 F.3d 1110, 1114 (9th Cir. 1999). The form of the doctrine at issue here is "offensive nonmutual issue preclusion," which prevents "a defendant from relitigating the issues which a defendant previously litigated and lost against another plaintiff." *Syverson v. IBM Corp.*, 472 F.3d 1072, 1078 (9th Cir. 2007) (quoting *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 329 (1979)). A party invoking a defendant's prior criminal conviction as the basis for offensive preclusion must demonstrate: (1) the prior conviction was for a serious offense; (2) the issue at stake in the civil proceeding is identical to the issue raised in the prior criminal proceeding; (3) there was a full and fair opportunity to litigate the issue at the prior trial; and (4) the issue on which the prior conviction is offered was actually litigated and necessarily decided at trial. *Ayers v. City of Richmond*, 895 F.2d 1267, 1271 (9th Cir. 1990); *see also Syverson*, 472 F.3d at 1078.

We typically look to four factors (sometimes referred to as the Restatement factors) to determine whether two issues are "identical" for purposes of issue preclusion:

> (1) Is there a substantial overlap between the evidence or argument to be advanced in the second proceeding and that advanced in the first?
>
> (2) Does the new evidence or argument involve the application of the same rule

of law as that involved in the prior proceeding?

(3) Could pretrial preparation and discovery related to the matter presented in the first action reasonably be expected to have embraced the matter sought to be presented in the second?

(4) How closely related are the claims involved in the two proceedings?

*Howard v. City of Coos Bay*, 871 F.3d 1032, 1041 (9th Cir. 2017); *see* Restatement (Second) of Judgments § 27 cmt. c (Am. Law Inst. 1982). These factors "are not applied mechanistically." *Howard*, 871 F.3d at 1041; *see* Jack H. Friedenthal, Mary Kay Kane & Arthur R. Miller, *Civil Procedure* § 14.10 (5th ed. 2015) ("The assessment of the similarity of issues necessary to decide whether collateral estoppel should preclude relitigation of a particular issue varies with the facts of each case.").

## IV.

We begin our analysis by comparing the record in the DOJ's criminal case with the allegations in the SEC's enforcement action, to determine whether the issues actually litigated and determined in the criminal proceeding are identical to those raised in the civil proceeding.[1]

---

[1] Stein's argument that issue preclusion is inapplicable due to a lack of identity of issues is apparently limited to the SEC's claims for violations of Section 10(b) of the Exchange Act, Exchange Act Rule 10b-5, and Section 17(a) of the Securities Act. We therefore do not consider the identity of issues between Stein's criminal proceeding and

As outlined above, the DOJ's criminal case against Stein focused on his scheme to inflate Heart Tronics' stock price by creating false purchase orders, and using those purchase orders as the basis for false press releases and SEC filings. The evidence presented at the criminal trial was that Stein drafted one purchase order attributed to CHM for $1.98 million, two false purchase orders attributed to IT Healthcare for $3.3 million, and three false press releases; and then he profited from selling Heart Tronics' securities to investors while materially false information was in the market. In light of this evidence, the jury found Stein guilty of (among other offenses) three counts of securities fraud in violation of 18 U.S.C. § 1348, which means it found the following facts proved beyond a reasonable doubt, as instructed by the trial judge: (1) Stein "knowingly executed or attempted to execute a scheme or artifice to defraud;" (2) Stein "did so with intent to defraud;" and (3) "[t]he scheme to defraud was in connection with any security of Heart Tronics, Inc." *See Emich Motors Corp. v. Gen. Motors Corp.*, 340 U.S. 558, 569 (1951) (explaining that trial courts assessing the preclusive effect of a prior criminal conviction based on a general verdict determine which issues were necessarily decided by examining the pleadings, evidence submitted, jury instructions, and other parts of the record).

The same fraudulent scheme that underpinned Stein's criminal conviction served as the basis for the SEC's claims that Stein violated Section 10(b) of the Exchange Act, Exchange Act Rule 10b-5, and Section 17(a) of the Securities Act. "Section 17(a) of the Securities Act, and

---

the SEC's other claims. *Brownfield v. City of Yakima*, 612 F.3d 1140, 1149 n.4 (9th Cir. 2010) ("We review only issues which are argued specifically and distinctly in a party's opening brief") (quoting *Greenwood v. FAA*, 28 F.3d 971, 977 (9th Cir. 1994)).

Section 10(b) of the Exchange Act and Rule 10b-5, prohibit fraudulent conduct or practices in connection with the offer or sale of securities." *SEC v. Dain Rauscher, Inc.*, 254 F.3d 852, 855 (9th Cir. 2001). These antifraud provisions prohibit schemes to defraud, and they prohibit "making a material misstatement or omission in connection with the offer or sale of a security by means of interstate commerce." *Id.* at 855–56. Securities fraud in violation of Section 17(a)(1), Section 10(b), and Rule 10b-5 require a showing of scienter, while violations of Sections 17(a)(2) and (3) require a showing of negligence. *Id.* at 856.

Having considered the records in the criminal and civil proceedings in light of the relevant Restatement factors, we conclude that Stein's conviction determined the identical issues the SEC was required to prove to establish Stein's liability for securities fraud. First, both the criminal and civil case involve the same fraudulent scheme carried out by Stein: an effort to inflate Heart Tronics' stock price by using false purchase orders and false press releases to profit from the sale of the company's securities. A review of the civil complaint, the criminal indictment, and the trial transcript indicates there is a "substantial overlap" between the evidence and argument to be advanced in the SEC's enforcement action and that advanced by the DOJ at trial, and that the claims involved are "closely related." Restatement (Second) of Judgments § 27 cmt. c; *see Howard*, 871 F.3d at 1041. Therefore, these factors support the conclusion that the issues previously decided in the criminal trial are identical to those at issue in the civil case.

Second, the SEC's securities fraud claims involve "the application of the same rule of law" as that involved in the criminal case. Restatement (Second) of Judgments § 27 cmt. c. Stein's conviction required the jury to find (1) a scheme

or artifice to defraud, (2) with fraudulent intent, (3) in connection with any security. *See* 18 U.S.C. § 1348. These findings encompass the SEC's claims, which require proof of the same elements except that Section 17(a) prohibits fraud "in the offer or sale of any securities," which was what was at stake in the criminal trial, and Sections 17(a)(2) and (3) do not require scienter. Therefore, the DOJ proved beyond a reasonable doubt the same issues the SEC needed to prove only by a preponderance of the evidence. There is no difference in the applicable legal standards that would affect the outcome of the civil case.

Finally, pretrial preparation and discovery related to the criminal proceeding could "reasonably be expected" to have embraced the issues sought to be presented in the SEC's civil case. Restatement (Second) of Judgments § 27 cmt. c. The DOJ's prosecution of Stein involved the same fraudulent scheme—including the same false purchase orders, fictitious companies, made-up names, and false press releases—at issue in the civil action. Given the nearly complete overlap of facts, there is no issue of significance presented by the SEC's action that could be expected to fall outside pretrial preparation and discovery related to the criminal proceeding.

In sum, the issues the SEC seeks to preclude Stein from litigating in the civil action are identical to the issues litigated and decided in the DOJ's criminal case. Accordingly, the district court did not err in entering summary judgment based on the preclusive effect of Stein's conviction.

## V.

Stein disagrees, and we turn now to his arguments. Stein first contends that the precise issue as to why the $1.98 million CHM purchase order was fraudulent at issue in this

action was not actually litigated and decided in his criminal case. Stein argues that the DOJ's position in the criminal case was that the CHM purchase order was "all made up" and "never happened," while the SEC's position in this case is that Tribou signed the CHM order. Stein contends that because the SEC alleges that Tribou signed the CHM order, the SEC in effect admits that the order was not fraudulent.

This argument fails. The DOJ's position regarding the fraudulent CHM purchase order is, in fact, consistent with the SEC's allegations. In the criminal case, the DOJ argued before the jury that the CHM purchase order was "made up" on the grounds that CHM was a fictitious company with no connection to Tribou, and that Stein arranged for Carter to send fabricated documents from Japan to create the impression the CHM sales order was real. Likewise, the SEC alleged that although Tribou contracted to purchase a certain number of units from Heart Tronics in his personal capacity, the purchase order counter-signed by Heart Tronics and returned to Tribou identified the customer as CHM, "a fictitious entity that was not known to [Tribou]." The SEC further alleged that Stein "orchestrated an elaborate scheme"—having a fabricated letter sent from Japan—to create the illusion that the CHM order was viable. Therefore, in both the criminal and civil proceedings the underlying theory was that the CHM purchase order was fraudulent because CHM was not a real company and was not connected to Tribou. Accordingly, the issue of whether the CHM purchase order was fraudulent was actually litigated and decided at Stein's criminal trial.

Stein next argues the district court abused its discretion in applying issue preclusion because its application was "unfair" under *Parklane Hosiery*. In *Parklane Hosiery*, the Supreme Court explained that although trial courts have

"broad discretion" to determine whether to apply offensive issue preclusion, the doctrine should not be applied when doing so "would be unfair to a defendant." 439 U.S. at 331. Stein contends that because this circuit would have resolved his *Giglio* claim differently than the Eleventh Circuit did, issue preclusion was unfair under the circumstances.

Under *Giglio v. United States*, 405 U.S. 150 (1972), a conviction must be set aside if the prosecution knowingly uses false testimony, or fails to correct false testimony, and that testimony was "material." *See Jackson v. Brown*, 513 F.3d 1057, 1071–72 (9th Cir. 2008); *Hayes v. Brown*, 399 F.3d 972, 984 (9th Cir. 2005). False testimony is "material" if "there is any reasonable likelihood that [it] could have affected the judgment of the jury." *Dow v. Virga*, 729 F.3d 1041, 1048 (9th Cir. 2013) (emphasis omitted) (quoting *United States v. Agurs*, 427 U.S. 97, 103 (1976)).

After his conviction, Stein argued on appeal that the DOJ violated *Giglio*, partly because it knowingly relied on false testimony by Tracey Jones (the assistant to the then-Heart Tronics CEO) and Woodbury. The Eleventh Circuit rejected this argument, concluding that because Stein was at the time of the testimony in possession of the evidence needed to demonstrate the alleged falsity of the testimony, there could be no *Giglio* violation. *Stein*, 846 F.3d at 1150. Stein argues that the Eleventh Circuit's resolution of his *Giglio* claim is at odds with this circuit's rule that "the government's duty to correct perjury by its witnesses is not discharged merely because defense counsel knows, and the jury may figure out, that the testimony is false." *United States v. LaPage*, 231 F.3d 488, 492 (9th Cir. 2000). On the basis of this purported split in circuit court authority, Stein contends that our court would have concluded that the DOJ's failure to correct the testimony at issue entitled him to a new trial.

Assuming Stein is correct that the Eleventh Circuit treats *Giglio* claims differently than we do—which we need not determine—the supposed circuit split does not help him here. This is because the testimony Stein alleges was false is not "material," a concept defined consistently across circuits. *Compare Reis-Campos v. Biter*, 832 F.3d 968, 976 (9th Cir. 2016), *with Guzman v. Sec'y, Dep't of Corr.*, 663 F.3d 1336, 1348 (11th Cir. 2011). Stein contends that because Jones and Woodbury received an October 24, 2007 email with a copy of a $50,000 check from Tribou attached, Jones testified falsely when she stated that she "never received any backup" on the purchase orders, and Woodbury testified falsely when he said he "got all [his] information from . . . Stein" in preparing the SEC filings. But in light of the evidence that CHM did not exist, that there was no connection between CHM and Tribou, and that Stein engaged in an extensive effort to fabricate supporting documentation for the CHM purchase order, there is no "reasonable likelihood" that Jones and Woodbury's allegedly false testimony "could have affected the judgment of the jury." *Dow*, 729 F.3d at 1048. The case against Stein was overwhelming, and the prosecution's correction of the allegedly false testimony would not have cast meaningful doubt on Stein's guilt.

Stein also argues the district court's application of issue preclusion was "unfair" because the SEC action affords him "procedural opportunities unavailable in the first action that could readily cause a different result." *Parklane Hosiery*, 439 U.S. at 331. Specifically, Stein contends that the SEC action presents him with his "first opportunity" to review nearly 200 million documents contained in an SEC database. Stein asserts that reviewing these documents will allow him to determine whether DOJ prosecutors spoke to an individual named "Yossi Keret," who was listed in a public

SEC filing as CFO of an Israeli company, before telling the jury that Yossi Keret was a fabricated name.

Stein's argument is baseless. The record indicates that Stein did, in fact, have access to the 200 million-document database during his criminal trial. At a pre-trial hearing before the district judge on April 3, 2013, Stein indicated he was working his way through the documents to determine which documents might be relevant for him to use at trial. Transcript of Hearing Proceeding at 38, *United States v. Stein*, No. 11-cr-80205-KAM, ECF No. 146 (Stein stating to trial judge: "That database, which I've given the Court the address to, is – has 200 million documents. Obviously, all of those documents are not relevant. . . . However, some of the documents as I go through them are relevant."); *see also id.* at 43–44. Therefore, the SEC action does not mark Stein's "first opportunity" to review the database in question; Stein, in fact, was reviewing the database in preparation for his criminal trial.

Moreover, even if Stein did not have access to the database until after his trial, reviewing the database was not an opportunity "that could readily cause a different result." *Parklane Hosiery*, 439 U.S. at 331. The individual that prosecutors argued did not exist was "Yossie" (with an "e") Keret, not "Yossi" Keret. "Yossie" Keret, argued the DOJ, was affiliated with a phony company called "IT Healthcare," while "Yossi" Keret was in 2004 apparently the CFO of a real company called Pluristem Life Systems, Inc. Therefore, confirmation that the SEC did, or did not, talk to "Yossi Keret" of Pluristem Life Systems would not likely undermine the DOJ's argument that "Yossie Keret" of "IT Healthcare" was fabricated to make fraudulent purchase orders appear legitimate.

The district court's application of issue preclusion was not unfair.

## VI.

We turn now to Stein's claim that the district court erred in denying his request to continue the summary judgment motion to allow for additional discovery pursuant to Federal Rule of Civil Procedure 56(d). "A district court's refusal to continue a hearing on summary judgment pending further discovery is reviewed for an abuse of discretion." *Swoger v. Rare Coin Wholesalers*, 803 F.3d 1045, 1047 (9th Cir. 2015).

A party requesting a continuance pursuant to Rule 56(d) must identify by affidavit "the specific facts that further discovery would reveal, and explain why those facts would preclude summary judgment." *Tatum v. City & County of San Francisco*, 441 F.3d 1090, 1100 (9th Cir. 2006). The facts sought must be "essential" to the party's opposition to summary judgment, Fed. R. Civ. P. 56(d), and it must be "likely" that those facts will be discovered during further discovery, *Margolis v. Ryan*, 140 F.3d 850, 854 (9th Cir. 1998).

In his declaration in opposition to the SEC's motion for summary judgment, Stein stated that additional discovery would allow him to confirm or deny the existence of Yossi Keret and other allegedly made up individuals. Stein asserted that if he could find Keret, and others, he could ask them questions about their involvement in the fraudulent purchase orders.

Stein did not satisfy Rule 56(d). For one thing, he failed to identify with specificity facts "likely to be discovered" that would justify additional discovery. *Margolis*, 140 F.3d

at 854. Rather, the evidence Stein sought was "the object of mere speculation," which is insufficient to satisfy the rule. *Ohno v. Yasuma*, 723 F.3d 984, 1013 n.29 (9th Cir. 2013); *see also Margolis*, 140 F.3d at 854 (affirming district court's denial of Rule 56(d) motion where assertions regarding the evidence that would result from additional discovery were "based on nothing more than wild speculation"). Furthermore, Stein did not explain how additional facts would preclude summary judgment. Stein stated in his declaration that he "cannot possibly oppose the Motion for Summary Judgment in an effective manner without complete and truthful answers to all outstanding discovery." But this conclusory assertion is not enough. Stein did not, for example, point out how particular evidence not yet discovered was "essential" to his argument that issue preclusion was inapplicable or unfair. Accordingly, the district court did not abuse its discretion in denying Stein's request for a continuance pending further discovery.

## VII.

Finally, Stein contends the district court erred in denying his motion for summary adjudication with respect to Paragraph 77 of the SEC's complaint. Paragraph 77 alleges in relevant part: "Stein falsely told Rauch [a stock promoter] that Heart Tronics would imminently announce up to $100 million in sales and that the Company's stock price was artificially depressed by naked short sellers." Stein argues he was entitled to summary adjudication on this allegation because he presented evidence that the SEC confirmed naked short selling of Heart Tronics stock, which means he could not have lied about the short selling.

The district court did not err. First, Stein's "evidence" that the SEC confirmed naked short selling of Heart Tronics stock was a broken link to an SEC web page. Like the district

court, we could not access the link, nor otherwise confirm its contents. Absent any evidence negating the SEC's allegation, or a demonstration by Stein that the SEC lacks sufficient evidence to carry its burden, Stein has not demonstrated the absence of a genuine dispute of material fact. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Therefore, the district court did not err in denying Stein's motion for summary adjudication on this allegation. *Id.* at 1102–03 ("If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial.").

Second, even if Stein produced evidence of naked short selling of Heart Tronics stock, such evidence would not demonstrate the absence of a genuine dispute as to the truth of the SEC's allegation in Paragraph 77. This is because the falsity of the statement alleged by the SEC stemmed from both Stein's assertions of naked short selling *and* his representation that Heart Tronics "would imminently announce up to $100 million in sales." A reasonable jury presented with evidence of naked short selling of Heart Tronics stock could still decide that Stein's statement was materially false based on Stein's false assertion that Heart Tronics' would imminently announce up to $100 million in sales. Accordingly, the district court did not err in denying Stein's motion for summary adjudication. *See S. Cal. Darts Ass'n v. Zaffina*, 762 F.3d 921, 925 (9th Cir. 2014) ("A dispute is 'genuine' if 'a reasonable jury could return a verdict for the nonmoving party.'" (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986))).

## VIII.

Stein's criminal conviction conclusively established all of the facts the SEC was required to prove with respect to the specified securities fraud claims. Accordingly, we **AFFIRM** the district court's summary judgment. All pending motions are denied as moot.