788 A.2d 834 (2002)
346 N.J. Super. 558
Jennifer BARKER, Plaintiff-Appellant,
v.
John Allen BRINEGAR, Dollar Systems, Inc., Spartan Foods of America, Inc., and State Farm Insurance Companies, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Submitted November 5, 2001.
Decided January 18, 2002.
*836 Koulikourdis and Associates, Hackensack, attorneys for appellant, (Jae Park, on the brief).
Darlene P. Butler, Roseland, attorney for respondents John Allen Brinegar and Spartan Foods of America, Inc., (Christopher E. McIntyre, on the brief).
Before Judges KESTIN, STEINBERG, and ALLEY.
*835 The opinion of the court was delivered by STEINBERG, J.A.D.
Pursuant to leave granted, plaintiff Jennifer Barker appeals from an interlocutory order which precluded her, on the basis of collateral estoppel, from introducing any evidence in her personal injury action regarding MRI reports and testimony relative to her claim that she suffered spinal injuries in an accident and was required to undergo spinal surgery. We reverse.
On May 13, 1997, a motor vehicle operated by plaintiff was struck by a vehicle operated by defendant, John Allen Brinegar. The vehicle operated by Brinegar was owned by defendant Dollar Rent-A-Car.[1] At the time of the accident, Brinegar was employed by defendant Spartan Foods of America, Inc. In the fifth count of her complaint, plaintiff sought damages against her insurance carrier, defendant *837 State Farm Insurance Companies (State Farm), contending that it would not pay any personal injury protection (PIP) benefits subsequent to November 10, 1998. Specifically, she alleged that she was scheduled to have orthopedic surgery and "may need further physical therapy, thereby, incurring additional medical expenses."
Immediately after the accident, plaintiff went to Hackensack Medical Center's emergency room. She was given emergency treatment and was told to follow up with her private physician. On May 15, 1997, she went to her personal physician, Dr. Adeniyi Ogunkoya, for treatment. Dr. Ogunkoya's initial diagnosis was posttraumatic lumbosacral sprain/strain; posttraumatic cervical sprain/strain; muscle spasms, shoulder tenderness, and wrist pain. Dr. Ogunkoya ordered an MRI of the lumbosacral spine, which showed "abnormal appearance of the L4 vertebral body with posterior displacement of the posterior wall especially prominent at the endplace causing severe stenosis of the bony canal. Lateral recesses and neural foramina." Upon discharge, on December 30, 1997, Dr. Ogunkoya rendered the following diagnosis: Chronic traumatic lumbosacral sprain/strain; posttraumatic cervical sprain/strain; posttraumatic left wrist pain; headaches; and hypertension. He also noted that at the time of discharge, plaintiff was still experiencing severe discomfort and significant limitation of range of motion in the lumbosacral spine area. He recommended that she continue to exercise and return to his office for further re-evaluation or orthopedic referral if her condition worsened.
On July 16, 1998, at the request of State Farm, plaintiff was evaluated by Dr. Lawrence Kraut, an orthopaedic surgeon. In his report, dated July 16, 1998, Dr. Kraut said he found no objective signs of permanent orthopedic disabilities or radiculopathies related to the accident. He also opined that "the reported MRI scan of the lumbosacral spine [did] not represent acute accident-related pathology." He noted that no further treatment was necessary other than a self-directed home therapy program if plaintiff had further subjective complaints.
Plaintiff continued to experience pain in her lower back and legs. Consequently, she was referred to Dr. Calvin C. Matthews, an orthopaedic surgeon. Dr. Matthews had an MRI conducted on plaintiff on August 26, 1998. He concluded that she suffered from a severe spinal stenosis at the L4 level. He further opined that at L3-L4, there appeared to be a mild disc bulge and a suggestion of a disc herniation at L4-L5 centrally and to the left. He recommended that she receive decompression surgery on her spine. The surgery was performed on December 3, 1998. Thereafter, plaintiff had several follow-up examinations. She continued to complain of pain and underwent physical therapy treatments. Plaintiff continued treating with Dr. Matthews until April 3, 2000.
At that time, although there was some improvement, plaintiff still experienced discomfort and tenderness to her spine.
While her personal injury action was pending, plaintiff sought payment of her medical bills from State Farm. Unable to amicably resolve her request for payment of her outstanding medical bills, on June 2, 1999, plaintiff filed a demand for arbitration of the dispute with the American Arbitration Association (AAA). On July 7, 1999, plaintiff filed an amended demand for arbitration. At the time the demand for arbitration was made, plaintiff's attorney possessed a discharge summary from East Orange General Hospital, which referred to the hospitalization for the surgery, and a March 22, 1999 report from Dr. Matthews relating to plaintiff's progress *838 after the surgery. Both reports were very brief and did not mention the accident.
On April 26, 1999, Dr. Kraut authored an additional report.[2] In that report, Dr. Kraut concluded that while plaintiff may have suffered "soft tissue sprains" as a result of the accident, he also said she did not suffer an acute fracture of the L4 vertebral body. Rather, he opined that her symptoms were "most likely Paget's disease ... [which] usually manifests and produces signs and symptoms of spinal stenosis." He concluded that "the diagnosis of spinal stenosis as well as the subsequent back surgery of 12/3/98 [was] not causally related to the motor vehicle accident of 5/13/97."
On January 15, 1999 and January 27, 1999, plaintiff's attorney had written to Dr. Matthews requesting a report. On April 27, 1999, counsel was advised by Matthews that the report was completed and would be sent upon payment of $250 for its preparation. On June 28, 1999, counsel forwarded a check for $250 to Matthews and again requested the report.
On November 8, 1999, the arbitration took place. At that time, plaintiff's attorney still did not have a diagnostic report from Dr. Matthews. The arbitrator allowed plaintiff twenty days to submit additional evidence, presumably the report of Dr. Matthews, and State Farm was granted an additional twenty days to respond. On November 10, 1999, counsel again wrote Dr. Matthews requesting a report. Apparently, none was submitted. Consequently, on February 12, 2000, the arbitrator rendered his decision, concluding that plaintiff had "failed to prove, by a preponderance of the credible evidence, that the unpaid claims included in [the] arbitration were causally related to the accident or were medically necessary." Finally, on December 1, 2000, plaintiff's attorney received Dr. Matthews's report, dated October 30, 2000.
In that report, he offered the following diagnosis: sprain/strain, cervical spine; compression fracture, L4 vertebrae; sciatica; and strain/sprain, left wrist with contusion. He also noted that plaintiff's "symptomatologies suggested radiculopathy into the left lower extremity, weakness of the left lower extremity and sensory deficit." He reported that the surgery had been performed. He further noted a number of follow-up visits as a result of pain suffered by plaintiff. He prescribed a course of physical therapy and concluded that plaintiff's injuries were "within reasonable medical judgment causally related to the accident of 5/13/97."
Prior to trial in the personal injury action, defendants Brinegar and Spartan Foods moved to exclude any evidence or testimony regarding plaintiff's back surgery and related medical expenses. The motion judge determined that the arbitrator's decision had preclusive effect and granted the motion. Plaintiff appeals, contending that the motion judge erred in giving preclusive effect to the determination of the arbitrator, because she "lacked a full and fair opportunity to litigate the issue of causation" in the arbitration proceedings.
"In appropriate circumstances, arbitration awards may be given collateral estoppel effect in subsequent judicial proceedings." Konieczny v. Micciche, 305 N.J.Super. 375, 384, 702 A.2d 831 (App. Div.1997). Collateral estoppel allows a defendant who is not a party to an action involving a common plaintiff to use a *839 finding of fact from the prior action to preclude litigation of the issue in a pending case. See id. at 385-86, 702 A.2d 831. The doctrine "bars relitigation of issues previously litigated and determined adversely to the party against whom [it] is asserted." Kortenhaus v. Eli Lilly & Co., 228 N.J.Super. 162, 164, 549 A.2d 437 (App.Div.1988). Collateral estoppel is designed to protect litigants from relitigating identical issues and to promote judicial economy. Ibid. Thus, the doctrine is premised upon efficiency and is designed "to promote efficient justice by avoiding the relitigation of matters which have been fully and fairly litigated and fully and fairly disposed of." Id. at 166, 549 A.2d 437. In all cases in which collateral estoppel is sought to be invoked, the court must, in the exercise of its discretion, weigh economy against fairness. Batson v. Lederle Labs., 290 N.J.Super. 49, 54, 674 A.2d 1013 (App.Div.1996), aff'd as modified, 152 N.J. 14, 702 A.2d 471 (1997). Because collateral estoppel is an equitable doctrine, it will not be applied if it is not fair to do so. Kozlowski v. Smith, 193 N.J.Super. 672, 675, 475 A.2d 663 (App.Div. 1984). Efficiency is subordinated to fairness and, consequently, if the court is satisfied that efficiency would lead to an unjust result, its application should not be tolerated. See Kortenhaus, supra, 228 N.J.Super. at 166, 549 A.2d 437.
"New Jersey courts follow the doctrine of collateral estoppel or the rule of issue preclusion described in the Restatement of Judgments." Hernandez v. Region Nine Hous. Corp., 146 N.J. 645, 659, 684 A.2d 1385 (1996). In Restatement (Second) of Judgments § 29, titled "Issue Preclusion in Subsequent Litigation with Others," a plaintiff must, in order to avoid the preclusion bar, demonstrate either "that he lacked full and fair opportunity to litigate the issue" in a prior proceeding, or there are "other circumstances [that] justify affording [plaintiff] an opportunity to relitigate the issue." Restatement (Second) of Judgments § 29, at 291 (1982). The doctrine should not be rigidly applied if the party sought to be precluded "did not have an adequate opportunity or incentive to obtain a full and fair adjudication in the initial action." Id. § 28, at 274. An example of other compelling circumstances making it inappropriate to invoke the doctrine is that new evidence has become available that could likely lead to a different result. Id. § 29 comment j, at 297.
The party seeking to invoke the doctrine of collateral estoppel in order to preclude relitigation of an issue must demonstrate:
(1) the issue [sought] to be precluded is identical to the issue decided in the prior proceeding; (2) the issue was actually litigated in the prior proceeding ... [and] that "the litigant against whom issue preclusion is invoked [had] a full and fair opportunity to litigate the issue..."; (3) the court in the prior proceeding issued a final judgment on the merits; (4) the determination of the issue was essential to the prior judgment; and (5) the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding.

[In re Estate of Dawson, 136 N.J. 1, 20-21, 641 A.2d 1026 (1994) (citations omitted).]
Accord Selective Ins. Co. v. McAllister, 327 N.J.Super. 168, 173-74, 742 A.2d 1007 (App.Div.), certif. denied, 164 N.J. 188, 752 A.2d 1290 (2000); Pivnick v. Beck, 326 N.J.Super. 474, 485, 741 A.2d 655 (App. Div.1999), aff'd, 165 N.J. 670, 762 A.2d 653 (2000).
Applying these principles of law, we conclude that the judge erred in granting the motion. Indeed, the motion judge never balanced the potential for unfairness *840 occasioned by precluding litigation of the issue against the efficiency of preclusion. Rather, the judge merely determined that the issue of causation had been fully litigated in the arbitration proceedings, thus requiring preclusion. We reject any notion that plaintiff must demonstrate that she could not have discovered or obtained the report with due diligence. Unlike an application to set aside a final judgment which implicates principles of finality, we are not here concerned with whether a prior determination should be set aside because efficiency requires treating the prior determination as conclusive. Rather, we must decide whether the overarching principle of fairness requires that we reject rigid application of collateral estoppel under the circumstances here presented. Restatement (Second) of Judgments, supra, § 29 comment j, at 297. We agree that the judge may consider diligence, or lack of diligence, in determining whether the prior determination should be given preclusive effect. However, we hold that a lack of diligence does not require invocation of collateral estoppel particularly where, as here, plaintiff attempted to obtain Dr. Matthews's evaluation prior to the arbitration proceeding.
We recognize that we have previously held that arbitration awards may be given preclusive effect even though the claimant had subsequently obtained an expert's report that may have changed the result of the arbitration proceeding when the report was reasonably obtainable prior to the arbitration proceedings. Konieczny, supra, 305 N.J.Super. at 387, 702 A.2d 831; Kozlowski, supra, 193 N.J.Super. at 675, 475 A.2d 663. Here, however, unlike Konieczny and Kozlowski, the record demonstrates that plaintiff made diligent efforts to obtain Dr. Matthews's supplemental report prior to the arbitration proceedings. Unfortunately, it was not until nearly one year after the proceedings had been concluded and an award made that she was able to obtain the report that may have changed the result.
Because the doctrine of collateral estoppel is essentially one of fairness, we conclude that the judge erred in giving preclusive effect to the arbitration proceedings. The arbitrator did not determine after considering all of the evidence that plaintiff's complaints regarding her back and the ultimate surgery were not related to the accident. The arbitrator merely held that based upon the evidence presented, plaintiff had not established by a preponderance of the evidence that her complaints regarding her back were related to the accident. It is one thing to deny plaintiff PIP benefits. It is quite another thing to deny plaintiff the opportunity to recover for her pain and suffering related to the back surgery, as well as any temporary or permanent disability. We hold that while considerations of efficiency may have suggested giving preclusive effect to the arbitration proceedings, the overarching principles of fairness and justice require a different result. Consequently, we reverse and remand.
Finally, for the sake of completeness, we note and reject defendants' contention that because a final determination by a dispute resolution professional of a PIP claim is binding, N.J.S.A. 39:6A-5.1(c), plaintiff is bound by the determination in the personal injury action. We hold that the binding effect of the dispute resolution simply means that plaintiff may not seek recovery for PIP benefits. However, N.J.S.A. 39:6A-5.1(c) does not require a finding that the binding nature of the PIP determination precludes plaintiff from seeking recovery in another action for her pain and suffering and her temporary and permanent disability, if any, from a potential tortfeasor.
*841 Reversed and remanded for further proceedings consistent with this opinion.
NOTES
[1] Improperly pled as Dollar System's, Inc.
[2] The report is directed to Maryann Levering, LPN, of United Review Services. The capacities of Levering and United Review Services are unclear from the record.