KOBLITZ, J.A.D.
*34 A defendant in a foreclosure case may not fail to diligently pursue a germane defense and then pursue a civil case against the lender alleging fraud by foreclosure. Plaintiff, Shulamis Adelman, individually and as executrix of the estate of her deceased husband *35 Norman, appeals from a June 12, 2015 order dismissing with prejudice her individual claims for breach of contract and violation of the Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 to 56:8-206. She also appeals from the February 19, 2016 order granting summary judgment to Wells Fargo on the remaining claims in her complaint.
In the related foreclosure action, in opposition to a motion for possession of the property after the sheriff's sale, plaintiff for the first time raised the issue that a loan modification had been granted. Her belated application was denied and possession granted to Wells Fargo in the foreclosure action.
Plaintiff filed her Law Division complaint after final judgment was entered in the foreclosure case, but before opposing the motion for possession and before dismissing her appeal of the foreclosure case. In this civil complaint she alleged that Wells Fargo pursued a final foreclosure judgment in spite of having modified her husband's mortgage on the home during the pendency of the foreclosure case. Plaintiff could have pursued her appeal of the denial of this germane claim in the foreclosure litigation rather than raising the same issue in other litigation. Because plaintiff attempted to litigate the same issue in two forums, we affirm the grant of summary judgment.
Defendant Wells Fargo made a $330,890 loan to Norman on May 18, 2006, securing his promissory note with a mortgage on his Freehold property. More than eighteen months later, Norman married plaintiff.
*434 The loan went into default on January 1, 2009. Six months later, Wells Fargo filed a foreclosure complaint. Norman offered no defense, and default was entered in November 2009.
Three months later, Norman began submitting financial documents to Wells Fargo seeking a loan modification. In April 2010, Wells Fargo sent Norman a letter requesting an initial payment of $4500, stating "[i]f you are not approved for a loan modification, the initial payment will be returned to you." Norman made that payment, which was never returned. The following month, Wells *36 Fargo sent Norman loan modification agreement documents. Norman signed the documents in May 2010. Although a representative of Wells Fargo also signed the loan modification, Wells Fargo never sent the signed document to Norman. The loan modification documents disclosed that a title report might be required to validate that the mortgage would remain in first lien priority. The first $3110.25 payment under the loan modification was due July 1, 2010.
On July 2, 2010, Norman called Wells Fargo to say he could not make the first payment under the loan modification due to "curtailment of income." Wells Fargo called Norman on July 13, 2010, to explain that it could not go forward with the modification because the title search disclosed five judgment liens on the property. Norman claimed those judgments had been satisfied.
On December 14, 2010, months after plaintiff claims the loan modification was finalized, a final foreclosure judgment in the amount of $361,251.77 was entered. Although represented by counsel, Norman did not object to the entry of final judgment, nor did he seek to vacate the final judgment. Instead, more than six months later, on June 30, 2011, Norman and plaintiff filed this action in the Law Division. Almost a year later, in May 2012, the property was sold at a sheriff's sale. Nine months later, Wells Fargo filed a motion for possession of the property in the foreclosure action. Norman opposed the motion for possession, belatedly arguing that the existence of the 2010 loan modification cured the default. The court granted Wells Fargo's motion for possession on October 25, 2013.
In February 2014, the Adelmans filed an order to show cause in the foreclosure action, seeking to recuse the Chancery judge and to stay eviction. The Adelmans argued again that the default was cured by the loan modification. The judge refused to recuse herself, but stayed the eviction due to Norman's ill health. Plaintiff filed an appeal in the foreclosure action in April 2014. A consent order was subsequently entered staying eviction until after August 17, 2014 due to Norman's health.
*37 Norman died before that eviction date. Plaintiff was then appointed executrix of the estate of Norman Adelman. Plaintiff withdrew the foreclosure appeal in September 2014, and subsequently vacated the home, more than five and one-half years after the mortgage had gone into default.
Plaintiff, individually and as executrix of Norman's estate, amended the 2011 complaint in March 2015, asserting claims for breach of contract, violation of the CFA, and intentional infliction of emotional distress. Wells Fargo moved to dismiss plaintiff's claims, pursuant to Rule 4:6-2(e), and the court granted the motion in part. The court determined that because plaintiff, in her individual capacity, was not a party to the original mortgage, note, or modification, the breach of contract claim could not move forward. Similarly, the court dismissed plaintiff's CFA claim because she was not a party to the agreements in question, and therefore she failed to show an ascertainable loss.
*435 The court later granted summary judgment on the remaining claims based on the entire controversy doctrine, res judicata and collateral estoppel. The court also explained that because plaintiff could not show defendant engaged in conduct that was outrageous or extreme, the intentional infliction of emotional distress claim would also be dismissed.
We review a court's grant of summary judgment de novo, applying the same standard as the trial court. Conley v. Guerrero, 228 N.J. 339, 346, 157 A.3d 416 (2017). Summary judgment must be granted if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199, 129 A.3d 1069 (2016) (quoting R. 4:46-2(c) ).
Rule 4:30A describes the effect of the entire controversy doctrine:
*38 Non-joinder of claims required to be joined by the entire controversy doctrine shall result in the preclusion of the omitted claims to the extent required by the entire controversy doctrine, except as otherwise provided by [Rule ] 4:64-5 (foreclosure actions)....
Rule 4:64-5 states:
Unless the court otherwise orders on notice and for good cause shown, claims for foreclosure of mortgages shall not be joined with non-germane claims against the mortgagor or other persons liable on the debt. Only germane counterclaims and cross-claims may be pleaded in foreclosure actions without leave of court. Non-germane claims shall include, but not be limited to, claims on the instrument of obligation evidencing the mortgage debt, assumption agreements and guarantees....
Rule 4:64-5 establishes two categories of counterclaims that may arise in a foreclosure action. First, the rule explains that, absent judicial approval, "non-germane" claims cannot be brought as counterclaims in the foreclosure action, and thus they must be exempt from preclusion under the entire controversy doctrine. For example, because a claim for unpaid rent is non-germane to a foreclosure action, it cannot be joined in that same foreclosure action; a later suit for rent would not be barred by the entire controversy doctrine. See Luppino v. Mizrahi, 326 N.J.Super. 182, 184-85, 740 A.2d 1111 (App. Div. 1999).
To determine which types of claims are germane, "a liberal rather than a narrow approach" should be used. Leisure Tech.-Ne. Inc. v. Klingbeil Holding Co., 137 N.J.Super. 353, 358, 349 A.2d 96 (App. Div. 1975). We have stated the "failure to raise the defenses and counterclaims in the foreclosure action very well [may bar] assertion of those claims and defenses in a subsequent action" in the foreclosure context. Sun NLF Ltd. P'ship v. Sasso, 313 N.J.Super. 546, 551, 713 A.2d 538 (App. Div. 1998).
Rule 4:64-5 does not provide a permissive basis for bringing clearly germane counterclaims in the foreclosure action. We agree with Judge Thurber's thoughtful and comprehensive opinion, Delacruz v. Alfieri, 447 N.J.Super. 1, 12-20, 145 A.3d 695 (Law Div. 2015). Plaintiff's claim that a loan modification had been implemented is a fundamental defense to Wells Fargo's right to foreclose. The homeowner chose not to raise the defense at the *39 time final judgment was entered. Plaintiff only belatedly raised the germane issue of the loan modification in the foreclosure action. When the court ruled against her, she *436 filed, but did not pursue an appeal. Rather, she pursued the appeal of the dismissal of the civil complaint she filed based on the same allegations.
The entire controversy doctrine "embodies the principle that the adjudication of a legal controversy should occur in one litigation in only one court; accordingly, all parties involved in a litigation should at the very least present in that proceeding all of their claims and defenses that are related to the underlying controversy." Highland Lakes Country Club & Cmty. Ass'n v. Nicastro, 201 N.J. 123, 125, 988 A.2d 90 (2009) (quoting Cogdell v. Hosp. Ctr. at Orange, 116 N.J. 7, 15, 560 A.2d 1169 (1989) ). Our Supreme Court has previously explained that the purposes of the entire controversy doctrine "are threefold: (1) the need for complete and final disposition through the avoidance of piecemeal decisions; (2) fairness to parties to the action and those with a material interest in the action; and (3) efficiency and the avoidance of waste and the reduction of delay." DiTrolio v. Antiles, 142 N.J. 253, 267, 662 A.2d 494 (1995) (citing Cogdell, 116 N.J. at 15, 560 A.2d 1169 ).
Res judicata, like the entire controversy doctrine, serves the purpose of providing "finality and repose; prevention of needless litigation; avoidance of duplication; reduction of unnecessary burdens of time and expenses; elimination of conflicts, confusion and uncertainty; and basic fairness." First Union Nat'l Bank v. Penn Salem Marina, Inc., 190 N.J. 342, 352, 921 A.2d 417 (2007) (quoting Hackensack v. Winner, 82 N.J. 1, 32-33, 410 A.2d 1146 (1980) ). The doctrine "contemplates that when a controversy between parties is once fairly litigated and determined it is no longer open to relitigation." Lubliner v. Bd. of Alcoholic Beverage Control, 33 N.J. 428, 435, 165 A.2d 163 (1960).
A court has broad discretion to determine whether application of collateral estoppel is appropriate.
*40 Parklane Hosiery Co. v. Shore, 439 U.S. 322, 331, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979). Although the doctrine "is designed to protect litigants from relitigating identical issues and to promote judicial economy," a court in exercising its discretion must "weigh economy against fairness." Barker v. Brinegar, 346 N.J.Super. 558, 566, 788 A.2d 834 (App. Div. 2002). "Fundamental to the theory of collateral estoppel is the notion that the earlier decision is reliable, an underlying confidence the result was substantially correct. The premise is that properly retried, the outcome should be the same." Kortenhaus v. Eli Lilly & Co., 228 N.J.Super. 162, 166, 549 A.2d 437 (App. Div. 1988) (citing Restatement (Second) of Judgments § 29 cmt. f (Am. Law Inst. 1982) ).
Collateral estoppel, also known as issue preclusion, prohibits relitigation of issues if its five essential elements are met. Those elements are that:
(1) the issue to be precluded is identical to the issue decided in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the court in the prior proceeding issued a final judgment on the merits; (4) the determination of the issue was essential to the prior judgment; and (5) the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding.
[ Allen v. V & A Bros., Inc., 208 N.J. 114, 137, 26 A.3d 430 (2011) (quoting Olivieri v. Y.M.F. Carpet, Inc., 186 N.J. 511, 521, 897 A.2d 1003 (2006) ).]
" 'On the merits' means that the factual issues directly involved must have been actually litigated and determined." Slowinski v. Valley Nat'l Bank, 264 N.J.Super. 172, 183, 624 A.2d 85 (App. Div. 1993). "In the case of a judgment entered by *437 confession, consent, or default, none of the issues is actually litigated." Allesandra v. Gross, 187 N.J.Super. 96, 106, 453 A.2d 904 (App. Div. 1982) (quoting Restatement (Second) of Judgments § 27 cmt. e (Am. Law Inst. 1982).
Here, the five collateral estoppel elements are met: 1) the issue is identical to the issue decided in the prior proceeding, namely, whether the alleged loan modification prevented defendant from pursuing entry of judgment in the foreclosure action; 2) although the issue was arguably not fully litigated in the foreclosure *41 action, had plaintiff timely raised the issue in that action, full litigation would have been provided; 3) the court's decision in the foreclosure action to grant defendant's motion for possession amounted to a final judgment on the merits; 4) the determination of the issue of the loan modification was essential to the foreclosure action; and 5) the parties in the present matter are the same as the parties in the foreclosure matter. Therefore, collateral estoppel bars plaintiff's claims in the present matter.
The motion court found that the issues presented by plaintiff were identical to those litigated in the foreclosure action, explaining, "[t]he issue of the enforceability of the 2010 loan modification agreement is at the heart of plaintiff's claims and was directly related to the foreclosure action and should have been raised as part of that litigation." Because the loan modification issue should have been fully and timely litigated during the previous foreclosure proceedings, the entire controversy doctrine, res judicata, and collateral estoppel prevent plaintiff from raising the issue in an independent lawsuit.
Affirmed.