**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4772-17T3

TRACIE IRVIN,

     Plaintiff-Appellant,

v.

TIMOTHY JAMES ECHEANDIA,

     Defendant-Respondent.

_____

Submitted June 5, 2019 – Decided June 25, 2019

Before Judges Koblitz and Mayer.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. L-4125-16.

Hegge & Confusione, LLC, attorneys for appellant (Michael J. Confusione, of counsel and on the brief).

Howard D. Lipstein, attorney for respondent.

PER CURIAM

Plaintiff Tracie Irvin appeals from a May 25, 2018 order granting summary judgment in favor of defendant Timothy James Echeandia and dismissing her complaint. We affirm.

The facts are undisputed. Plaintiff was a tenant in an apartment building owned by defendant. The building sustained water damage during Hurricane Sandy, causing the ceiling in plaintiff's apartment to collapse. Plaintiff claimed she suffered injuries to her head and neck when the ceiling collapsed. Plaintiff filed a personal injury complaint against defendant in August 2014, alleging negligence and nuisance (2014 lawsuit). In March 2016, plaintiff settled her claims against defendant. In resolving the 2014 lawsuit, plaintiff signed a release that contained the following language:

> I release and give up any and all claims and rights which I may have against you. This releases all claims, including those of which I am not aware and those not mentioned in this Release. This Release applies to claims resulting from anything which has happened until now, I specifically release the following claims: for any and all claims for personal injuries arising out of a ceiling fall down accident which occurred on or about October 29, 2012 at [defendant's apartment building] and all claims which [were] the subject of a cause of action titled Irwin vs Escheandia et [als.] in the Superior Court of New Jersey, Law Division[,] Essex County under Docket No. ESX-L-6048-14.

Three months after settling the 2014 lawsuit, in June 2016, plaintiff filed another personal injury complaint against defendant, alleging she developed sinusitis as a result of mold in her apartment caused by Hurricane Sandy water damage (2016 lawsuit). In the 2016 lawsuit, plaintiff alleged defendant violated provisions of the New Jersey Administrative Code, New Jersey's Mold Safe Housing Act, and municipal ordinances. She also asserted claims against defendant for negligence and breach of contract.

Defendant filed a motion for summary judgment seeking dismissal of the 2016 lawsuit. Defendant argued plaintiff's release of claims in the 2014 lawsuit precluded her claims in the 2016 lawsuit. He further asserted that plaintiff had her apartment tested for mold in 2014 and received a written report in March 2014, opining the apartment contained excessive levels of mold spores. Defendant also claimed plaintiff knew of her sinus problems while the 2014 lawsuit was pending because she underwent sinus surgery in March 2014, prior to dismissal of the 2014 lawsuit.

The motion judge heard argument on defendant's summary judgment motion. In an oral decision placed on the record on May 25, 2018, the judge granted the motion, finding plaintiff's execution of the release in the 2014

lawsuit precluded plaintiff's claims against defendant in the 2016 lawsuit.  The

following is the judge's summary of the pertinent timeline:

> October 29, 2012 - Hurricane Sandy caused damage to the roof of the defendant's apartment building.
>
> October 29, 2012 - the ceiling in plaintiff's apartment collapsed from the water damage attributable to Hurricane Sandy, causing injuries to plaintiff's head and neck.
>
> October 2012 through 2014 - water from Hurricane Sandy and subsequent storms seeped into plaintiff's apartment, causing mold to grow in the walls of the apartment.
>
> February 2014 - plaintiff experienced problems breathing and saw a doctor.  The doctor opined plaintiff suffered from sinusitis and recommended surgery.
>
> March 2014 - plaintiff had nasal surgery.
>
> August 29, 2014 - plaintiff filed the 2014 lawsuit.
>
> March 28, 2016 - plaintiff settled the 2014 lawsuit and signed a release.
>
> June 2016 - plaintiff filed the 2016 lawsuit.

Based on this timeline, the judge concluded that, as of 2014, plaintiff

"knew there was mold in her apartment," "tested [her apartment] for mold and

it was positive . . . ," had nasal surgery, and was informed by her surgeon that

"her [breathing] difficulty was caused by the mold in her apartment."  The judge

4

A-4772-17T3

found that despite awareness of these facts, plaintiff signed a release, and "the release couldn't be clearer. She released and gave up all her claims, including all claims she didn't even know about." In addition, the judge concluded the 2016 lawsuit was barred by the entire controversy doctrine as plaintiff's claims in that lawsuit related to injuries suffered as a result of Hurricane Sandy that were asserted and settled in the 2014 lawsuit. He also found the 2016 lawsuit was barred by the doctrine of res judicata because the second lawsuit involved the same parties and same claims as the 2014 lawsuit.

On appeal, plaintiff argues the judge erred in dismissing her personal injury claims in the 2016 lawsuit.

We review a grant of summary judgment de novo, applying the same standard as the trial court. Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016) (citing Mem'l Props., LLC v. Zurich Am. Ins. Co., 210 N.J. 512, 524 (2012)). Summary judgment must be granted if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." Ibid. (quoting R. 4:46-2(c)).

A-4772-17T3

We first consider whether the release signed by plaintiff barred plaintiff's 2016 lawsuit. "[T]he scope of a release is determined by the intention of the parties as expressed in the terms of the particular instrument . . . . A general release, . . . ordinarily covers all claims and demands due at the time of its execution and within the contemplation of the parties." Bilotti v. Accurate Forming Corp., 39 N.J. 184, 203-204 (1963). When the language in a release refers to "any and all claims," courts generally do not permit exceptions. Isetts v. Borough of Roseland, 364 N.J. Super. 247, 255-56 (App. Div. 2003).

Here, the language in the release is unequivocal. Plaintiff expressly relinquished "any and all claims and rights" she may have had against defendant as of the date she signed the release. As of 2014, plaintiff was aware of her personal injuries from mold growing in her apartment due to Hurricane Sandy water damage. Yet, in 2016, she released defendant from "any and all claims." Based on our review of the record, we discern no error in the judge's dismissal of the 2016 lawsuit based on the unambiguous language of the release.

We next examine whether the 2016 lawsuit was barred by the entire controversy doctrine (ECD). The ECD requires the parties to an action raise all transactionally-related claims in that action. See Pressler & Verniero, Current N.J. Court Rules, cmt. 1 on R. 4:30A (2019). Rule 4:30A provides "[n]on-

joinder of claims required to be joined by the [ECD] shall result in the preclusion of the omitted claims to the extent required by the [ECD] . . . ."

The ECD "embodies the principle that the adjudication of a legal controversy should occur in one litigation in only one court; accordingly, all parties involved in a litigation should at the very least present in that proceeding all of their claims and defenses that are related to the underlying controversy." Wadeer v. N.J. Mfrs. Inc. Co., 220 N.J. 591, 605 (2015) (quoting Highland Lakes Country Club & Cmty. Ass'n v. Nicastro, 201 N.J. 123, 125 (2009)). The goals of the ECD include: "(1) the need for complete and final disposition through the avoidance of piecemeal decisions; (2) fairness to parties to the action and those with a material interest in the action; and (3) efficiency and the avoidance of waste and the reduction of delay." Ibid. (quoting DiTrolio v. Antiles, 142 N.J. 253, 267 (1995)). "In determining whether a subsequent claim should be barred under [the ECD], 'the central consideration is whether the claims against the different parties arise from related facts or the same transaction or series of transactions.'" Ibid. (quoting DiTrolio, 142 N.J. at 267).

The judge correctly determined plaintiff's claims in the 2016 lawsuit were barred by the ECD. The claims in the 2014 and 2016 lawsuits arose from the

same factual transaction – personal injuries related to Hurricane Sandy water damage. Despite the awareness of her nasal injury when she filed the 2014 lawsuit, plaintiff elected not to include the claim in that litigation. Plaintiff's failure to include all injury claims in the 2014 lawsuit arising from the same related facts – water damage from Hurricane Sandy – warrants dismissal of her 2016 lawsuit.

We next consider whether the judge erred in concluding the 2016 lawsuit was barred by the doctrine of res judicata. Res judicata "refers broadly to the common-law doctrine barring relitigation of claims or issues that have already been adjudicated." Velasquez v. Franz, 123 N.J. 498, 505 (1991). Res judicata "contemplates that when a controversy between parties is once fairly litigated and determined it is no longer open to relitigation." Aldeman v. BSI Fin. Servs., Inc., 453 N.J. Super. 31, 39 (App. Div. 2018) (quoting Lubliner v. Bd. of Alcoholic Beverage Control, 33 N.J. 428, 435 (1960)). "The application of res judicata . . . requires substantially similar or identical causes of action and issues, parties, and relief sought." Walker v. Choudary, 425 N.J. Super. 135, 151 (App. Div. 2012) (quoting Charlie Brown of Chatham, Inc. v. Bd. of Adjustment, 202 N.J. Super. 312, 327 (App. Div. 1985)).

Here, plaintiff's personal injury claims attributable to Hurricane Sandy were litigated in the 2014 lawsuit and were resolved in March 2016. Plaintiff knew in 2014 that she suffered a nasal injury due to mold growing in her apartment after Hurricane Sandy. Yet, she elected not to pursue claims against defendant for that injury until she settled the 2014 lawsuit and released "any and all claims" against defendant. Plaintiff clearly had the opportunity to include her personal injury claims arising from mold in her apartment in the 2014 lawsuit but did not do so.

Plaintiff never amended her complaint in the 2014 lawsuit to include her nasal injury claim. She then released "any and all claims" against defendant in March 2016. Thus, plaintiff's 2016 lawsuit is an improper attempt to litigate claims plaintiff could have presented in the 2014 lawsuit and her claims in her 2016 lawsuit are barred.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4772-17T3