NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

ANGELA L. KRIVULKA, *Plaintiff/Appellant*,

*v.*

MICHAEL J. LERNER, et al., *Defendants/Appellees*.

HANNAH KRIVULKA, et al., *Intervenors/Appellees*.

No. 1 CA-CV 22-0566
FILED 4-11-2024

Appeal from the Superior Court in Maricopa County
No. CV2020-008668
The Honorable Katherine Cooper, Judge

**AFFIRMED**

COUNSEL

Snell & Wilmer, LLP, Phoenix
By Patricia Lee Refo, Matt Jarvey
*Counsel for Plaintiff/Appellant*

Burch & Cracchiolo, PA, Phoenix
By Daryl Manhart, Bryan F. Murphy, Ralph D. Harris
*Co-Counsel for Defendants/Appellees Lerner*

Osborn Maledon, PA, Phoenix
By David B. Rosenbaum, Joseph N. Roth, Joshua J. Messer
*Co-Counsel for Defendants/Appellees Lerner*

Perkins Coie, LLP, Phoenix
By Howard Ross Cabot, John H. Gray, Margo R. Casselman
*Counsel for Intervenors/Appellees Krivulka*

---

**MEMORANDUM DECISION**

Presiding Judge Cynthia J. Bailey delivered the decision of the Court, in which Judge Jennifer B. Campbell and Judge David D. Weinzweig joined.

---

**B A I L E Y**, Judge:

¶1        Plaintiff/Appellant Angela Krivulka ("Angela") appeals the dismissal of her First Amended Complaint against Defendants/Appellees Michael J. Lerner ("Lerner") and Harriot Derman ("Derman") (collectively, "the Executors"), who are administrators of the Estate of Joseph J. Krivulka ("Joseph"), based on issue preclusion and *forum non conveniens*.  For the following reasons, we affirm.

### FACTS AND PROCEDURAL HISTORY

¶2        This appeal concerns one of three lawsuits filed by Angela related to the disposition of Joseph's estate ("the Estate"), all of which have significant overlap.  The first two matters were filed in New Jersey, one in state and one in federal court.  The suit at issue here was filed in Arizona state court.

¶3        Angela alleges she and Joseph married while residents of New Jersey in March 2005, and the couple developed ties to Arizona in about 2008 or 2009.  According to Angela, they eventually established domicile in Arizona, although substantial contrary evidence indicates Joseph intended to remain domiciled in New Jersey.  In February 2018, Joseph died in Arizona.

¶4        Soon after, Angela initiated probate proceedings in New Jersey state court, filing as co-executor of the Estate and identifying Joseph as a New Jersey resident.  Lerner and (later) Derman were named co-executors of the Estate.  In April 2021, Lerner and Derman sought to remove

Angela as a co-executor because she was asserting personal claims and taking actions inconsistent with her obligations to the Estate, a motion that the New Jersey probate court granted in September 2021. *See In re Estate of Krivulka*, Docket Nos. A-0863-20, A-0803-21, 2022 WL 3693103, at *1, *7, *11–16 (N.J. Super. Ct. App. Div. Aug. 26, 2022) (unpublished opinion affirming Angela's removal and reversing the denial of Angela's motion to disqualify Lerner's law firm as representative of the co-executors of Joseph's Estate). The New Jersey state court continues to handle the probate and administration of Joseph's Estate. *See id.* at *16.

¶5            Meanwhile, in July 2020, Angela filed a legal malpractice lawsuit against Lerner and his law firm in the federal district court of New Jersey, alleging they had not disclosed certain conflicts of interest during the administration of the Estate and the probate proceedings. *See Krivulka v. Lerner*, Civil Action No.: 2:20-cv-09724, 2021 WL 3260851, at *1 (D.N.J. July 30, 2021) (slip opinion not for publication). The filing in federal district court was premised on diversity jurisdiction, with Angela arguing that Joseph was domiciled in Arizona continuously from at least August 2009 through the date of his death. *Id.* The defendants argued Joseph was domiciled in New Jersey and the federal court therefore lacked subject matter jurisdiction over the complaint. *Id.* The district court found that both Joseph and the defendants were domiciled in New Jersey and dismissed Angela's federal lawsuit for lack of diversity jurisdiction. *Id.* at *6–7.

¶6            Also in July 2020, Angela filed the lawsuit at issue here against Lerner in Arizona superior court. Angela asserted Lerner was wrongly treating the Estate as Joseph's separate property, when in fact she held a community or joint interest in the marital property, and she generally requested a declaration that assets related to Joseph were held by the marital community. After the superior court denied an initial motion to dismiss or, alternatively, to stay the litigation, filed by Lerner, the parties stipulated to add Derman as a defendant.

¶7            In May 2021, Angela filed a First Amended Complaint in the Arizona superior court, that retained the previously pled "Arizona domicile theory" and related allegations regarding Joseph and added a "prenuptial theory" based on allegations that the Krivulkas had signed a Spanish-language prenuptial agreement when they held a wedding ceremony in Mexico in 2005. Angela claimed that under the agreement's terms, the couple had adopted a Mexican law-based community property marital partnership. After Angela filed her amended complaint, Joseph's three children from an earlier relationship ("the Intervenors")—all of whom

3

live in New Jersey or a neighboring state—intervened in the Arizona lawsuit.

**¶8** In August 2021, after the federal district court's ruling in the New Jersey litigation, the Executors (joined by the Intervenors) filed a "Motion for Partial Judgment on the Pleadings and to Dismiss or Stay Remainder of Case," effectively seeking to dismiss the First Amended Complaint in the Arizona lawsuit. The Executors argued that issue preclusion applied because the Arizona domicile theory had already been litigated and resolved in their favor in the New Jersey federal district court, and under the doctrine of *forum non conveniens*, the prenuptial theory should continue to be litigated in the ongoing New Jersey probate proceeding. After responsive briefing and oral argument, the superior court took the motion under advisement.

**¶9** In July 2022, the superior court issued a minute entry pursuant to Rule 54(c), Ariz. R. Civ. P., granting the Executors' motion and dismissing Angela's First Amended Complaint on the grounds of issue preclusion and *forum non conveniens*.

**¶10** We have jurisdiction over Angela's timely appeal under Arizona Revised Statutes section 12-2101(A)(1).

## DISCUSSION

**¶11** In reviewing the superior court's grant of a motion for judgment on the pleadings, we accept the complaint's factual allegations as true but review the court's conclusions of law de novo. *Mobile Cmty. Council for Progress, Inc. v. Brock*, 211 Ariz. 196, 198, ¶ 5 (App. 2005) (citations omitted).

### I. The Arizona Domicile Theory and Issue Preclusion

**¶12** Angela contends the superior court erred in applying issue preclusion to her Arizona domicile theory.

**¶13** "Application of issue preclusion is an issue of law, which we review de novo." *Hancock v. O'Neil*, 253 Ariz. 509, 512, ¶ 9 (2022) (quoting *Picaso v. Tucson Unified Sch. Dist.*, 217 Ariz. 178, 180, ¶ 6 (2007)); *accord Crosby-Garbotz v. Fell ex rel. Pima Cnty.*, 246 Ariz. 54, 56–57, ¶ 9 (2019); *Campbell v. SZL Props., Ltd.*, 204 Ariz. 221, 223, ¶ 8 (App. 2003).

**¶14** "Issue preclusion, also known as collateral estoppel, precludes relitigating an issue of fact in a later case when, in a previous case,

the same issue was 'actually litigated, a final judgment was entered, and the party against whom the doctrine is to be invoked had a full and fair opportunity to litigate.'" *Crosby-Garbotz*, 246 Ariz. at 55, ¶ 1 (quoting *Chaney Bldg. Co. v. City of Tucson*, 148 Ariz. 571, 573 (1986)). "Issue preclusion serves to 'protect litigants from the burden of relitigating an identical issue' and to 'promote judicial economy by preventing needless litigation.'" *Id.* at 57, ¶ 10 (quoting *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979)).

**¶15** To determine whether a federal judgment has issue preclusive effect, Arizona courts "look to the controlling federal law in the circuit in which the federal judgment was entered." *Howell v. Hodap*, 221 Ariz. 543, 547, ¶ 18 (App. 2009) (citations omitted). Here, New Jersey preclusion law applies. *See Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508 (2001) (applying "the law that would be applied by state courts in the State in which the federal diversity court sits").[1]

**¶16** In New Jersey, issue preclusion applies to prohibit relitigating an issue when these elements are met:

> (1) the issue to be precluded is identical to the issue decided in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the court in the prior proceeding issued a final judgment on the merits; (4) the determination of the issue was essential to the prior judgment; and (5) the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding.

*Adelman v. BSI Fin. Servs., Inc.*, 179 A.3d 431, 436 (N.J. Super. Ct. App. Div. 2018) (citations omitted).

**¶17** Here, the superior court found that all the elements had been met. In support of her contention that the superior court erred in applying

---

[1] Both New Jersey and Arizona follow the Restatement (Second) of Judgments. *See Habick v. Liberty Mut. Fire Ins. Co.*, 727 A.2d 51, 57 (N.J. Super. Ct. App. Div. 1999) ("New Jersey follows the *Restatement (Second) of Judgments* respecting collateral estoppel." (citations omitted)); *Elia v. Pifer*, 194 Ariz. 74, 81, ¶¶ 33–34 (App. 1998) (noting that, in applying issue preclusion, "this court generally follows the Restatement whenever applicable" (citation omitted)).

issue preclusion to her Arizona domicile theory, Angela raises four issues.[2] We address each in turn.

### A. Scope of the Federal Court's Dismissal

**¶18**      First, Angela argues the federal court's jurisdictional dismissal cannot trigger issue preclusion for her Arizona state court claims. She contends that because the district court issued only a jurisdictional ruling, that ruling is preclusive only as to the federal diversity jurisdiction issue, not the substantive factual issues in her Arizona claims. We disagree.

**¶19**      Angela's argument conflates issue preclusion (collateral estoppel) with claim preclusion (res judicata). Although, when applied, claim preclusion applies to all claims arising out of the same facts that could have been brought, issue preclusion applies only to issues actually litigated and decided. *Watkins v. Resorts Int'l Hotel & Casino, Inc.*, 591 A.2d 592, 604 (N.J. 1991). Under issue preclusion, "when an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." *Id.* Thus, issue preclusion bars relitigating the same previously litigated issue even when it arises in a different context, which is the situation presented here. *See Okoro v. Bohman*, 164 F.3d 1059, 1063 (7th Cir. 1999) (recognizing that a jurisdictional dismissal precludes relitigating the ground of that dismissal, and thus has collateral estoppel (issue preclusive) effect rather than res judicata (claim preclusive) effect). For the district court to determine that diversity jurisdiction did not exist, it necessarily had to find that both Joseph and the defendants (Lerner and his law firm) were domiciled in New Jersey, such that the court could not maintain subject matter jurisdiction over Angela's complaint. *See Krivulka v. Lerner*, Civil Action No.: 2:20-cv-09724, 2021 WL 3260851, at *4, *6; 28 U.S.C. § 1332(a)(1) (conferring federal courts with subject matter jurisdiction when the amount in controversy exceeds $75,000 and there is

---

[2] In her opening brief, Angela does not challenge the superior court's findings that the district court issued a final judgment, that the district court's determination of the domicile issue was essential to the prior judgment, and that she was a party to or in privity with a party to both proceedings. *See Adelman*, 179 A.3d at 436. Thus, she has waived any argument that those factors are not satisfied. *See Ritchie v. Krasner*, 221 Ariz. 288, 305, ¶ 62 (App. 2009). She also does not directly dispute that the issue of Joseph's domicile was actually litigated in the district court, *see Adelman*, 179 A.3d at 436, though she challenges the litigation's fullness and fairness.

complete diversity of citizenship between the parties).  That domicile finding was binding in the Arizona action, *see Watkins*, 591 A.2d at 604, and the superior court did not err in precluding Angela from relitigating the issue of Joseph's domicile on this basis.

### B.      Full and Fair Opportunity to Litigate

**¶20**        Second, Angela argues issue preclusion should not apply because the district court issued its ruling without discovery or an evidentiary hearing.  She contends that she was therefore denied the opportunity to litigate the domicile issue fully and fairly in that proceeding.

**¶21**        Issue preclusion applies to issues actually litigated and determined in the prior action.  *Allesandra v. Gross*, 453 A.2d 904, 909 (N.J. Super. Ct. App. Div. 1982).  An issue is "actually litigated" if the "issue is properly raised, by the pleadings or otherwise, and is submitted for determination, and is determined."  *Id.* (quoting Restatement (Second) of Judgments § 27 cmt. d (1982)).

**¶22**        The law requires "the minimum requirements of due process" for an issue to be considered actually litigated and determined, *Witkowski v. Welch*, 173 F.3d 192, 205 (3d Cir. 1999), and Angela must have "procedural opportunities in the presentation and determination of the issues," *Konieczny v. Micciche*, 702 A.2d 831, 836 (N.J. Super. Ct. App. Div. 1997).

**¶23**        Here, the district court afforded Angela a full and fair opportunity to present her domicile case.  Angela submitted full briefing, and the court considered substantial evidence, including evidence of Joseph's voter registration, tax returns, company locations, residential properties, bank accounts, driver's license, and motor vehicle registrations, as well as his subjective motives in determining domicile.  *Krivulka v. Lerner*, Civil Action No.: 2:20-cv-09724, 2021 WL 3260851, at *5–6.  The parties properly raised the domicile issue by the pleadings and submitted it for determination by the district court.

**¶24**        Additionally, during the federal litigation, in December 2020, Angela advised the district court that the parties had "conferred as to the need for jurisdictional discovery prior to the Court's adjudicating Defendants' Motion to Dismiss . . . and have agreed that such discovery is not necessary at this time."  Later, in June 2021, Angela requested that the court hold its forthcoming ruling on the motion to dismiss "in abeyance so the parties can conduct jurisdictional discovery."  In support of her request, Angela presented portions of documents produced in the Arizona litigation

that she argued showed that "over the course of the ten-year joint representation," Lerner's law firm had concealed information from her, "never alerted her to conflicts between her and her husband's interests under Arizona law," and had known for years that she believed she and Joseph were domiciled in Arizona. A magistrate judge denied the request after finding the documents did not raise further factual questions about Joseph's domicile at the time of his death. *See id.* at *1 n.2. About six weeks after Angela's request to re-open jurisdictional discovery, the district court dismissed Angela's federal lawsuit for lack of diversity jurisdiction. *Id.* at *6–7. The court expressly noted (and apparently adopted the magistrate judge's ruling) that Angela's discovery request had been denied, *id.* at *1 n.2, and it also noted that "after Joseph died, and while [Angela] was represented by a counsel of her choosing . . . , she signed numerous tax returns on behalf of Joseph indicating that he was domiciled in New Jersey," *id.* at *6 n.9.

¶25　　　　Although Angela argues the district court did not consider Lerner's firm's conflict of interest and alleged "scheme" to conceal Joseph's "true" domicile, that court clearly did so, as it considered the evidence she presented, had the opportunity to review it, and did not find it or her arguments persuasive before ruling on the motion to dismiss. In fact, in rejecting Angela's Arizona domicile claim, the district court noted that it "would find that Joseph was domiciled in New Jersey when he died even notwithstanding" Angela's additional evidence and allegations about Lerner and his law firm's actions. *Id.* at *6. Consequently, Angela had a full and fair opportunity to be heard and to litigate the domicile issue in the district court. *See Barker v. Brinegar*, 788 A.2d 834, 839 (N.J. Super. Ct. App. Div. 2002). On this record, we discern no compelling circumstances making it appropriate to allow her to relitigate the issue here. *See Konieczny*, 702 A.2d at 836.

### C.　　Identical Issues

¶26　　　　Third, Angela argues that issue preclusion cannot apply because the domicile claims and issues in the federal and state cases are not identical. She notes that issue preclusion applies only when the issue to be precluded is identical to the issue decided in the prior proceeding, *see Adelman*, 179 A.3d at 436; *Barker*, 788 A.2d at 839, and she contends the issue and evidence are not the same because the district court considered only whether Joseph was domiciled in Arizona on the date of his death, and did not consider whether Joseph may have been domiciled in Arizona for a temporary period during the marriage.

¶27          "In deciding the similarity of issues for issue preclusion purposes, a court should consider whether there is substantial overlap of evidence or argument in the second proceeding; whether the evidence involves application of the same rule of law; whether discovery in the first proceeding could have encompassed discovery in the second; and whether the claims asserted in the two actions are closely related."  *First Union Nat'l Bank v. Penn Salem Marina, Inc.*, 921 A.2d 417, 424 (N.J. 2007) (citations omitted).  Where issues share a "high degree of similarity" and turn on the "same evidence," this factor is satisfied even if the relief sought is not identical.  *Id.*

¶28          Contrary to Angela's premise, rather than considering only the objective physical evidence of Joseph's domicile and evidence of Joseph's subjective intention *at the time of his death*, the district court stated that it considered evidence throughout his marriage "up until his death." *See Krivulka v. Lerner*, Civil Action No.: 2:20-cv-09724, 2021 WL 3260851, at *4–6.[3]  The court's opinion, when read in full, makes clear the court found that Joseph never intended to, and never did, change his domicile from New Jersey to Arizona.  *See id.* at *2, *4–6.  And Angela conceded as much when, in connection with her duties as a co-executor of the Estate, she signed an "affidavit of domicile" stating that Joseph "resided in the State of New Jersey for 12 years immediately preceding [his] death and was not a resident of any other state."  *Id.* at *2.  She also signed tax returns for Joseph's estate covering multiple years preceding his death, and on each of these "resident" tax returns, she identified New Jersey as Joseph's "legal residence" or "domicile."  *Id.*  Moreover, despite considering Angela's best evidence of Arizona domicile—which was Joseph's last year of life when he lived in Arizona for cancer treatment at the Mayo Clinic—and her "conflict of interest" arguments about Lerner and his firm, the district court rejected Angela's Arizona domicile claim.  *Id.* at *5–6.

¶29          Angela has not shown that the domicile evidence and issue presented in the superior court differ in any substantive way from the evidence and issue presented in the district court.  The issues presented in each court share a high degree of similarity, their resolution requires the same evidence, and the superior court did not err in rejecting this issue as lacking merit.  *See First Union Nat'l Bank*, 921 A.2d at 424.  The issue of whether Joseph was ever domiciled in Arizona satisfies the "identical issue" requirement.  *See Adelman*, 179 A.3d at 436; *Barker*, 788 A.2d at 839.

---

[3] At oral argument on appeal, Angela's counsel conceded the district court considered evidence "leading up to" the date of Joseph's death.

### D. Equity of Issue Preclusion

**¶30** Fourth, Angela argues that, even if the issue preclusion elements are otherwise met, preclusion should not apply because equitable factors, including the specter of unfairness, weigh against its application here. *See Barker*, 788 A.2d at 839 ("Because collateral estoppel is an equitable doctrine, it will not be applied if it is not fair to do so." (citation omitted)).[4]

**¶31** When the elements of issue preclusion are satisfied, New Jersey law requires courts to examine whether equity favors its application. *See Pivnick v. Beck*, 741 A.2d 655, 661–62 (N.J. Super. Ct. App. Div. 1999). "Some of the factors favoring application of issue preclusion are: conservation of judicial resources; avoidance of repetitious litigation; and prevention of waste, harassment, uncertainty and inconsistency." *Id.* at 662 (citation omitted). "[F]actors disfavoring application of collateral estoppel include: the party against whom preclusion was sought could not have obtained review of the judgment in the initial action; the quality or extensiveness of the procedures in the two actions were different; it was not foreseeable at the time of the initial action that the issue would arise in subsequent litigation; and the party sought to be precluded did not have an adequate opportunity to obtain a full and fair adjudication in the first action." *Id.* (citation omitted).

**¶32** A court applying equitable considerations "must not regard those considerations to be a license to substitute generalized concerns about the imposition of collateral estoppel when the clearly established elements

---

[4] Citing *Irby Construction Co. v. Arizona Department of Revenue*, 184 Ariz. 105 (App. 1995), the Executors argue we should review the superior court's ruling as to the equitable element of the issue preclusion question for an abuse of discretion. But *Irby* did not discuss the standard of review, and instead concluded without analysis that "the tax court did not abuse its discretion in its application of collateral estoppel." *Id.* at 109. Moreover, the case the Executors relied on at oral argument as support for the abuse of discretion standard, *SEC v. Stein*, 906 F.3d 823 (9th Cir. 2018), involved "'offensive nonmutual issue preclusion,' which prevents 'a defendant from relitigating the issues which a defendant previously litigated and lost against another plaintiff.'" *Id.* at 828 (citations omitted). That is not the case we face here. Thus, our review, as with the application of issue preclusion in general, is de novo. *See Jean Alexander Cosms., Inc. v. L'Oreal USA, Inc.*, 458 F.3d 244, 247–48 (3d Cir. 2006), *cited in Beeman v. Anthem Prescription Mgmt., Inc.*, 780 F. App'x 486, 491 (9th Cir. 2019) (Bea, J., concurring).

have been met." *Gannon v. Am. Home Prods., Inc.*, 48 A.3d 1094, 1109 (N.J. 2012).

¶33        Here, a weighing of the equities favors applying issue preclusion. Precluding relitigating the Arizona domicile issue here will conserve both the court's and the parties' time and financial resources, eliminate the risk of inconsistent rulings, and reduce the need for repeated litigation, especially for the Executors and Intervenors. To the extent that Angela argues that applying collateral estoppel would be unfair because she is not satisfied with the quality or extent of the procedures available to her in the federal district court, Angela filed both lawsuits—the New Jersey federal district court malpractice suit and this Arizona suit—and affirmatively put the question of Joseph's domicile at issue in both cases simultaneously. She thus had every incentive to vigorously litigate the domicile issue in the district court, and it appears that she did. It would make little sense, and would waste even more judicial and party resources, to relitigate the issue of Joseph being domiciled in Arizona.

¶34        Equitable considerations favor preclusion here, and the superior court did not err in applying issue preclusion to Angela's Arizona domicile theory.

II.        The Prenuptial Theory and *Forum Non Conveniens*

¶35        Angela also argues the superior court erred in dismissing the remainder of her case under the doctrine of *forum non conveniens*.

¶36        We review the superior court's *forum non conveniens* ruling for an abuse of discretion. *Coonley & Coonley v. Turck*, 173 Ariz. 527, 531 (App. 1993); *accord BOC Grp., Inc. v. Chevron Chem. Co.*, 819 A.2d 431, 437 (N.J. Super. Ct. App. Div. 2003). Under that doctrine, a defendant seeking dismissal must show there is an available and adequate alternative forum and, "on balance, the alternative forum is a more convenient place to litigate the case." *Coonley*, 173 Ariz. at 532 (citation omitted).

¶37        In determining a *forum non conveniens* motion, a court must consider and balance both private and public interest factors. *Id.* If those factors are closely balanced, the plaintiff is entitled to her choice of forum, because unless the balance is strongly in the defendant's favor, a plaintiff's choice of forum will rarely be disturbed. *Parra v. Cont'l Tire N. Am., Inc.*, 222 Ariz. 212, 215, ¶ 10 (App. 2009) (citations omitted). Absent a failure to "consider[] all relevant public and private interest factors" and reasonably balance those factors, the superior court's decision "deserves substantial

deference." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257 (1981) (citations omitted).

### A.    Dismissal of Angela's "Arizona-centric" Claims

**¶38**    Angela argues that the superior court's dismissal of her remaining prenuptial theory on *forum non conveniens* grounds was based on the court's alleged error in precluding her from litigating the issue of Joseph's domicile. She maintains that once we correct this alleged error, we must then reverse the court's dismissal of the remainder of the First Amended Complaint. Because we disagree that the superior court erred in applying issue preclusion to Angela's Arizona domicile theory, we do not further consider this argument.

### B.    Deference to Angela's Choice of Forum

**¶39**    Angela also argues the superior court erred in failing to give sufficient deference to her forum choice. She bases this argument on the court's statement that "[t]he plaintiff's choice of forum is only one among several considerations."

**¶40**    To the extent that the superior court's statement could be interpreted as ignoring or lessening any deference paid to the plaintiff's choice of forum, as Angela argues, the statement would be error. However, it has long been held that the reviewing court will not presume error, *see Federico v. Hancock*, 1 Ariz. 511, 513–14 (1882), and, instead, we look to see if the superior court's analysis of the private and public interest factors shows those factors are closely balanced or whether the balance strongly favors the Executors and Intervenors, *see Parra*, 222 Ariz. at 215, ¶ 10.

### C.    Private Interest Factors

**¶41**    Angela argues the superior court failed to properly weigh the private interest factors governing dismissal for *forum non conveniens* and instead relied on conclusions with no basis in the record.

**¶42**    Private interest factors include "the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling [witnesses], and the cost of obtaining attendance of willing witnesses; and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Coonley*, 173 Ariz. at 532–33 (citations omitted).

**¶43**        In finding that the private interest factors favored dismissing the Arizona litigation, the superior court stated:

> Private [interest] factors favor dismissing this action and allowing the parties to litigate the impact of the prenuptial agreement in the probate action. Most importantly, New Jersey is already administering Joseph's estate and has exclusive jurisdiction to determine all issues related to the estate, including the prenuptial agreement and marriage validity issues. The probate proceeding has been underway since 2018, while this case started two years later and has lagged. The probate action is more likely to be resolved sooner rather than later, either by settlement or trial, as all parties have an interest in finalizing the administration of the estate. A majority of witnesses and documents are in New Jersey. To the extent witnesses and/or discovery involve Mexico or other countries, Arizona offers no advantage. Dismissal will avoid duplicative discovery. It will prevent witnesses from having to appear in two trials instead of one. It will save all parties the additional cost of Arizona counsel.

**¶44**        Angela challenges several of the superior court's findings, including its use of the term "exclusive jurisdiction," and argues the findings either contain inaccuracies or lack full evidentiary support in the record. She therefore concludes the court's reasoning must be faulty, but we find her arguments unavailing as to the court's overall analysis and conclusion. The record makes clear that the relative ease of access to sources of proof and the expense of litigation factors support the superior court's decision to dismiss the entire Arizona case and allow the various claims and issues to proceed in New Jersey rather than be decided piecemeal in alternate forums. Litigating Angela's prenuptial theory in New Jersey will make a trial easier, more expeditious, and less expensive, especially for the Executors and Intervenors—who are likely witnesses in any case about Joseph's intent—and should not disadvantage Angela, who originally chose to file in New Jersey and will continue to participate in the New Jersey litigation because it will proceed no matter how this case is resolved.

**¶45**        On this record, the superior court did not err in determining that the private factors clearly favor dismissal.

### D. Public Interest Factors

¶46 Angela also argues the superior court failed to properly weigh the public interest factors governing dismissal for *forum non conveniens* and again relied on conclusions with no basis in the record. We disagree.

¶47 Public interest factors include "[a]dministrative difficulties . . . when litigation is piled up in congested centers" and the goal of having the trial "in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself." *Id.* at 533 (citations omitted).

¶48 In finding that the public interest factors favor dismissal, the superior court found:

> [N]o reasonable basis for parallel litigation "when litigation is piled up in" Maricopa County Superior Court. In addition to the facts cited above, the Court also considers that any decision from an Arizona court regarding Angela's interest in estate assets will ultimately be implemented and interpreted by the probate court and, therefore, should be decided by the probate court.

¶49 We find no error. Although the court did not analyze and compare the workload and burden of the two courts, as Angela argues it should have, the superior court's overall reasoning is sound and justifies finding the public interest factors favor dismissal. And because the superior court's analysis of the private and public interest factors—and our review—indicates the balance strongly favors the Executors and Intervenors, *see Parra*, 222 Ariz. at 215, ¶ 10, we also find no error in the superior court's overall evaluation and weighing of the *forum non conveniens* factors.

### III. Attorneys' Fees and Costs on Appeal

¶50 The parties agree that attorneys' fees are not appropriate on appeal. Accordingly, we do not award attorneys' fees, but award taxable costs to the Executors, Intervenors, and the Estate upon compliance with Rule 21, ARCAP.

## CONCLUSION

¶**51**     The superior court's dismissal of Angela's First Amended Complaint is affirmed.



AMY M. WOOD • Clerk of the Court
FILED:   AA