791 A.2d 300

T.M., PLAINTIFF–RESPONDENT, v. J.C.,
DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted January 15, 2002—Decided February 19, 2002.

Before Judges STERN, EICHEN and PARKER.

J.C., appellant *pro se*.

No brief was submitted on behalf of respondent.

The opinion of the court was delivered by

EICHEN, J.A.D.

Defendant, J.C., appeals from a final restraining order (FRO) entered against her on March 26, 2001, pursuant to the Prevention of Domestic Violence Act of 1990, *N.J.S.A.* 2C:25–17 to–33, prohibiting her from all contact with plaintiff, T.M., from jogging in Weequahic Park in Newark after 9:30 a.m., and from possessing firearms. Defendant contends that the proofs were insufficient to support a finding that an act of domestic violence had been committed as provided by *N.J.S.A.* 2C:25–19, and that the judge erred in finding the defendant guilty of "harassment," *N.J.S.A.* 2C:33–4, and "stalking," *N.J.S.A.* 2C:12–10.

This appeal concerns the demise of a dating relationship of four years duration that ended approximately six months before plaintiff filed his domestic violence complaint on March 19, 2001. In his complaint, plaintiff alleges that defendant "follows him to different places and that she has committed harassment by spreading rumors with the intention to damage [his] reputation." In addition, plaintiff alleges that defendant "stalked" plaintiff on March 19, 2001 in the Weequahic Park jogging area.

At the final hearing, plaintiff testified that when they were together, he and defendant used to jog in South Orange Park. After they separated, he changed his "running location" from South Orange Park to Weequahic Park and that defendant showed up there on March 19, 2001 and harassed him. Plaintiff further complained that defendant continues to contact his family members and ex-wife, making various statements about him and his new girlfriend, "causing him annoyance and damage to his reputation."[1] The judge concluded defendant had committed acts of domestic violence and entered the FRO prohibiting defendant

---

[1] Apparently, plaintiff has a musical band.

from communicating with plaintiff and restraining her from attending the park where plaintiff jogs after 9:30 a.m.[2]

On appeal, defendant makes the following arguments:

*POINT I*

WHETHER OR NOT THE STATE CAN USE ITS HARASSMENT STATUTE TO DEPRIVE APPELLANT OF HER CONSTITUTIONAL RIGHT OF FREE SPEECH TO FREELY COMMUNICATE WITH RELATIVES OR PERSONS KNOWN TO RESPONDENT WHO ARE WILLING OR WISH TO COMMUNICATE WITH APPELLANT SOLELY BECAUSE IT DISPLEASES RESPONDENT.

*POINT II*

WHETHER OR NOT APPELLANT WAS GUILTY OF STALKING RESPONDENT BECAUSE SHE CHOOSE [sic] TO JOG IN THE SAME PUBLIC PARK THAT APPELLANT KNEW RESPONDENT JOGGED IN ALTHOUGH APPELLANT JOGGED AT AN HOUR WHEN SHE ASSUMED RESPONDENT WOULD NOT BE THERE BECAUSE OF RESPONDENT'S PAST HABITS, KNOWN TO APPELLANT.

The record reflects that a prior domestic violence complaint was filed by plaintiff against defendant on December 7, 2000 and a temporary restraining order (TRO) was entered on that date against defendant by the same judge. *T.M. v. J.C.*, Docket No. FV-07-002030-01. The TRO directed defendant "to stay at least 5 blocks" away from him. That complaint alleges:

[the] vic[tim] ended the relationship approximately 2 mo[nths] ago since that time def[endant] has frequently appeared at locations that vic[tim] is known to frequent, vic[tim] states def[endant] has been asked to leave him alone many times; but refuses to cease, during w[ee]k of 12/2/2000 def[endant] came 4 [times].

* * * *

---

[2] Contrary to defendant's assertion, the judge did not restrain defendant from communicating with plaintiff's sister or any other members of plaintiff's family. He did admonish her that if she continues to make statements to them about plaintiff which he learns of and considers to be of an harassing nature, defendant may find herself charged with criminal contempt of the final restraining order. We do not address whether defendant may communicate with plaintiff's family members without risking a contempt citation; nor do we express an opinion concerning the broad temporal restraint imposed on defendant's jogging in Weequahic Park "after 9:30 a.m." *But see State v. Hoffman*, 149 *N.J.* 564, 582–86, 695 A.2d 236 (1997); *State v. L.C.*, 283 *N.J.Super.* 441, 448–51, 662 A.2d 577 (App.Div.1995).

Harassed vic[tim] w/derogatory statements vic[tim] states he's a public figure & vulnerable to danger, as well as embarrassment by using offensive language 3 mo[nths] ago def[endant] stated I'll kill you or have you killed.

On February 20, 2001, following an evidentiary hearing, the judge entered a "conditional" dismissal of the earlier complaint and rescheduled the case for June 14, 2001. The condition of the dismissal was that there be "no further domestic violence by either party." [3]

On the return date of the complaint which is the subject of this appeal (the present complaint), the judge referred generally to the proceedings on the dismissed complaint to support his conclusion that plaintiff had committed an act of domestic violence against defendant on the charges in the present complaint. The judge, however, made no findings of fact and conclusions of law with respect to the prior proceeding or, for that matter, the proceeding on the present complaint. *R.* 1:7–4. Apparently, the prior complaint was dismissed conditionally to afford both parties an opportunity to demonstrate they could avoid future contact with each other. We cannot tell whether the judge actually made a finding of domestic violence, or whether the parties agreed to the conditional dismissal of the complaint.

Whatever the circumstances, we hold that such a conditional dismissal was improper as not being authorized either by statute or rule. Each domestic violence complaint represents a separate action in which the court must determine whether the TRO will be converted into an FRO. Hence, if a domestic violence complaint is designated as "dismissed," the court loses jurisdiction to adjudicate whether an FRO should be entered. A conditional dismissal cannot be reconciled with the purpose of the Act which is to afford relief to persons who are at risk of domestic violence. Such a person is either at risk or not at risk. If the court finds the person is at risk, then the TRO must remain in place; if the

---

[3] We cannot discern from this record whether there were cross-complaints filed.

court finds that the person is not at risk, then the restraints must be dissolved and the complaint dismissed. We are aware that a trial court appears to have reached a contrary conclusion. *See C.O. v. J.O.,* 292 *N.J.Super.* 219, 678 *A.*2d 748 (Ch.Div.1996). To the extent that decision is contrary to our decision, it is overruled.

 Because the matter is remanded for findings of fact, we comment on the extent to which the judge can rely on evidence adduced at the prior proceeding. Depending on the nature of that evidence, the judge may or may not be able to consider it in reaching his decision on the present complaint because the first action was dismissed. A dismissal on the merits after adjudication usually determines that a plaintiff's proofs in a domestic violence action were not sufficient to constitute domestic violence. *See J.F. v. B.K.,* 308 *N.J.Super.* 387, 706 *A.*2d 203 (App.Div.1998) (applying *res judicata* and collateral estoppel as a bar to relitigation of allegations of domestic violence previously decided adversely to a plaintiff in a domestic violence hearing). However, an individual act previously rejected as insufficient to constitute domestic violence may take on greater significance because the act is later repeated in a manner that may amount to a course of conduct prohibited by *N.J.S.A.* 2C:33–4c and/or *N.J.S.A.* 2C:12–10b. In such instance, the prior act may be considered along with the new conduct in determining whether a plaintiff has established domestic violence based on a subsequent complaint. If not, it may be barred under principles of *res judicata.* We cannot determine that question here because the judge did not make any findings of fact with respect to the evidence adduced on either complaint. Even if we were willing to conduct our own independent review of the record, we could not resolve the question because we do not have a transcript of the prior proceeding. Findings are particularly critical because, as noted, it seems the judge relied on that evidence to conclude that defendant had committed domestic violence in connection with the present complaint. In the absence of the judge's findings and conclusions, we are unable to perform

our appellate review function. *Curtis v. Finneran*, 83 *N.J.* 563, 569–70, 417 *A.*2d 15 (1980).

Consequently, we remand the matter to the trial judge who shall make findings and conclusions with respect to the evidence which he based his conclusion that plaintiff had met his burden of proving domestic violence against defendant on the present complaint. The judge shall make those findings and conclusions and give the reasons for his decision in a supplemental opinion within forty-five days of the date of this decision. We retain jurisdiction pending our receipt and review of that opinion. However, if upon consideration of the evidence the Family Part judge determines that the evidence is not sufficient to justify a finding of domestic violence on the present complaint, then he shall dismiss the complaint and so indicate to the parties in a supplemental decision giving his reasons for that conclusion, providing a copy of that decision to the Clerk of this court within the same timeframe as established above. In that event, the appeal shall be dismissed as moot.

The matter is remanded to the trial court for further proceedings not inconsistent with this decision. Jurisdiction is retained.