# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3626-21

R.A.M., III,

    Plaintiff-Respondent,

v.

R.O.,[1]

    Defendant-Appellant.

_____

Submitted October 31, 2023 – Decided November 29, 2023

Before Judges Mayer and Paganelli.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Camden County, Docket No. FV-04-3276-22.

R.O., appellant pro se.

Law Offices of Lynda L. Hinkle, LLC, attorney for respondent (Lynda L. Hinkle, on the brief).

---

[1] We use initials to protect the confidentiality of the parties. R. 1:38-3(d)(10).

PER CURIAM

Defendant appeals from a June 9, 2022 final restraining order (FRO), entered against her and in favor of plaintiff, pursuant to the Prevention of Domestic Violence Act, N.J.S.A. 2C:25-17 to -35. Because we conclude the record does not permit meaningful appellate review we reverse and remand.

Moreover, on appeal, not argued before the trial judge, defendant asserts that the trial judge should be recused because of a conflict of interest. Given our remand, and because defendant never filed a recusal motion before the trial judge, we decline to consider the issue.

I.

We recite the facts from the trial record. Plaintiff and defendant had a dating relationship and have a child in common. On April 25, 2021, defendant and the child had a Zoom call. After the call ended, defendant sent plaintiff a message and asked about bruising on the child's face. Plaintiff replied that there was no bruising and took a photograph "just to have." That evening, the police arrived at plaintiff's house to check on the child. The child became upset when the police arrived.

Plaintiff testified that there were seventeen "specific incidents" where the police were contacted from January 26, 2020 to April 25, 2021. Moreover, when

the police came to the house, the child's "behavior . . . [wa]s very erratic" and he had "meltdown[s]" the next day. Also, plaintiff testified: defendant accused him of "making multiple false allegations of abuse against her"; defendant filed two "reckless driving complaint[s] against" him; and "the Division c[a]me out."[2]

Plaintiff posits that defendant is "trying to . . . push [him] into returning custody of the child to her or just making everything as difficult as possible." Plaintiff testified that defendant's actions have made him "look bad," having "the police coming out all the time," and "it[ is] mentally draining." He believes he requires a restraining order, otherwise "she's just going to keep doing it."

Defendant testified that she took two "screenshot[s]" of the child during the April 25, 2021 Zoom call. She noticed "red[ness] and what look[ed] like bruising on his forehead." She contacted plaintiff but was not satisfied with his response "because there were clear marks" and "[e]ventually, she went to the police." Because she is "employed by a school district," plaintiff explained that she is a "mandatory reporter" for suspected child abuse. Defendant admitted

---

[2] The record refers to Division and DCP&P, we understand the references to mean the Division of Child Protection and Permanency.

previously contacting DCP&P more than the police, but did not recall the exact number of times.

## II.

The judge found plaintiff established the predicate act of harassment. N.J.S.A. 2C:25-19(a)(13). Specifically, the judge found defendant violated N.J.S.A. 2C:33-4(c) that provides "a person commits . . . [harassment] if, with purpose to harass another, [s]he: [e]ngages in any other course of alarming conduct or repeatedly committed acts with purpose to alarm or seriously annoy such other person."

The judge determined there was "clear[] proof of a course of conduct . . . showing harassment, to annoy, . . . to worry, trouble, or offend." She found the conduct was of a "repetitive nature" over "the course of two years" and included seventeen calls to the police and more to DCP&P. On "each and every time" "there has been no sign of harm to the child." The judge found "most troubling . . . the harm that defendant's actions [we]re causing" the child.

The judge noted the parties' "extensive prior history . . . ," observing "this is the fifth . . . temporary restraining order" (TRO).

4

The judge determined that an FRO was necessary "for the harassment" because "the well-being of both [plaintiff] and [the child] is in danger if this is[ not] put to an end."

III.

We review questions of law determined by the trial court de novo. Smith v. Millville Rescue Squad, 225 N.J. 373, 387 (2016) (citing Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

Our review of a trial judge's factual findings is limited. Cesare v. Cesare, 154 N.J. 394, 411 (1998). "The general rule is that findings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence." Id. at 411-12 (citing Rova Farms Resort, Inc. v. Inv'rs Ins. Co., 65 N.J. 474, 484 (1974)). Moreover, "[b]ecause of the family courts' special jurisdiction and expertise in family matters, [we] . . . accord deference to family court fact[-]finding." Id. at 413. Such deference is particularly proper "when the evidence is largely testimonial and involves questions of credibility." Id. at 412 (quoting In re Return of Weapons to J.W.D., 149 N.J. 108, 117 (1997)).

Nonetheless, family "judges are under a duty to make findings of fact and to state reasons in support of their conclusions." Heinl v. Heinl, 287 N.J. Super. 337, 347 (App. Div. 1996) (citing R. 1:7-4(a)). "Meaningful appellate review is

A-3626-21

inhibited unless the judge sets forth the reasons for his or her opinion." Strahan v. Strahan, 402 N.J. Super. 298, 310 (App. Div. 2008) (quoting Salch v. Salch, 240 N.J. Super. 441, 443 (App. Div. 1990)). "Naked conclusions do not satisfy the purpose of [Rule] 1:7-4." Curtis v. Finneran, 83 N.J. 563, 570 (1980).

"[T]he task of a judge considering a domestic violence complaint, where the jurisdictional requirements have otherwise been met,[3] [is] . . . two-fold." Silver v. Silver, 387 N.J. Super. 112, 125 (App. Div. 2006). "First, the judge must determine whether the plaintiff has proven, by a preponderance of the credible evidence, that one or more of the predicate acts set forth in N.J.S.A. 2C:25-19a has occurred." Ibid. "The second inquiry, upon a finding of the commission of a predicate act of domestic violence, is whether the court should enter a restraining order that provides protection for the victim." Id. at 126; see also J.D. v. M.D.F., 207 N.J. 458, 475-76 (2011) (quoting N.J.S.A. 2C:25-29(b)) (an FRO should not be issued without a finding that "relief is necessary to prevent further abuse"). "[T]he guiding standard is whether a restraining order is necessary, upon an evaluation of the factors set forth in N.J.S.A. 2C:25-29a(1)

---

[3] The judge established jurisdiction finding the parties have "a child in common" and had "a dating relationship." N.J.S.A. 2C:25-19(d).

<span>A-3626-21</span>

– 29a(6), to protect the victim from an immediate danger or prevent future abuse." Id. at 127.

## IV.

Here, the incomplete factual record regarding the judge's Silver analysis precludes our appellate review. The record lacks any evidence of the context surrounding defendant's history of admitted calls to the police and DCP&P and refers to materials that are not part of the actual trial record.

In undertaking her Silver analysis, the judge found defendant committed the predicate act of "harassment," prong one, and there was an "extensive prior history" and "the well-being of both [plaintiff] and [the child] is in danger if this is[ not] put to an end," prong two.

However, absent from the record is any evidence regarding the nature of, or circumstances surrounding, the calls that gave rise to the judge's finding of harassment. Instead, aside from the number of calls, we are left to speculate that the calls were made "with purpose to harass" and through "repeatedly committed acts with purpose to alarm or seriously annoy" plaintiff. N.J.S.A. 2C:33-4(c). "It is not the role of the trial court or this court to fill in the gaps in plaintiff's proofs or make decisions that are not supported by sufficient credible evidence."

Bank of New York Mellon v. Corradetti, 466 N.J. Super. 185, 212 (App. Div. 2020).

Moreover, our review of the record reveals that certain information, not actually in the record, may have been considered by the trial judge. For instance, the judge referenced four prior TROs. Upon our review of the trial record, it appears that the restraining orders and the dispositions of these matters were not part of the record. The prior restraining orders may be relevant, see T.M. v. J.C., 348 N.J. Super. 101, 106 (App. Div. 2002); J.F. v. B.K., 308 N.J. Super. 387, 392 (App. Div. 1998), however neither the trial court nor this court can make that determination because they were not entered in the record.

Furthermore, the record reflects other information that was not part of the record: (1) "[T]his case has dealt with a lot of photographs and police reports in the past. . . . I[ a]m not going to present them again. Your honor recalls those. I know it has[ not] been that long ago, and some of them are part of the record; some are not"; (2) "I do want the record to reflect that this . . . matter . . . with these exact same allegations, have been before me. So I am well aware of the past history in this case"; (3) "So do you want to go through all of the past history again? Although we did it the last time we were here"; (4) "[W]hen you called the police . . . did you consider [the judge previously] telling you that you

should stop doing that?"; (5) "[Y]ou testified the last time we were here to - - to a number of specific incidents. And I[ a]m just going to state for the record the dates that you spoke of . . ."; and (6) "I do not believe that she is concerned for her child because there is nothing to be concerned about. Experts have all proven that."

"It is error to rest a decision on matters not appearing in the record." Second Reformed Church v. Bd. of Adjustment of Borough of Freehold, 30 N.J. Super. 338, 341 (App. Div. 1954.) (citing Giordano v. City Comm. of City of Newark, 2 N.J. 585 (1949)). Moreover, our review "is limited to whether the trial court's decision is supported by the record . . . ." New Jersey Div. of Youth and Family Services v. M.M., 189 N.J. 261, 278 (2007) (citing R. 2:5-4). We cannot conduct our review if the decision is supported by information not disclosed in the record. A judge's familiarity with issues based on prior dealings with the same litigants does not obviate the need to have a complete record for our appellate review.

Because we conclude the record does not permit meaningful appellate review, we are compelled to vacate the FRO, reinstate the TRO and remand the matter to the Family Part to develop a complete record.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

9

A-3626-21