# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0543-23

K.M.,

    Plaintiff-Respondent,

v.

V.S.,

    Defendant-Appellant.

_____

        Submitted October 8, 2024 – Decided December 30, 2024

        Before Judges Sumners and Susswein.

        On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Bergen County, Docket No. FV-02-0559-24.

        Shin & Jung LLP, attorney for appellant (Seung Han Shin, on the brief).

        Laterra & Hodge LLC, attorneys for respondent (Scott Adam Laterra, of counsel and on the brief).

PER CURIAM

Defendant V.S.[1] appeals from an October 4, 2023 final restraining order (FRO) entered against him pursuant to the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35. Defendant contends the record does not support the Family Part judge's factual findings and the judge erred by considering allegations of prior domestic violence that were previously dismissed on the merits after adjudication. Defendant also claims the judge did not provide him the opportunity to cross-examine plaintiff K.M.V. about the past allegations. Finally, defendant contends the judge's determination that an FRO is needed was conclusory, not anchored in specific findings of fact, and not supported by the factors enumerated in N.J.S.A. 2C:25-29(a)(1)-(6). After carefully reviewing the record in light of the governing legal principles, we affirm.

I.

We discern the following procedural history and facts from the record. In April 2023, plaintiff filed a complaint for divorce. On September 2, 2023, plaintiff filed a domestic violence complaint and temporary restraining order (TRO) alleging the predicate acts of assault and harassment committed that

---

[1] We use initials to protect the privacy and confidentiality of these proceedings. R. 1:38-39(d)(10).

morning at the parties' marital residence. A trial was convened on October 4, 2023. Both parties were self-represented.

This was the fourth TRO plaintiff filed against defendant. Of the prior three domestic violence complaints, the first was voluntarily dismissed. (FV-02-001671). Defendant contends the other two were dismissed after trial. (FV-02-000223-24; FV-02-002467-23).

At the October 4, 2023 trial before us on appeal, plaintiff testified that on September 2, 2023, she woke up in the morning, came down the stairs, and defendant "approached . . . [her] aggressively asking where are my car keys?" She told defendant, "I don't have any of your car keys . . . [a]nd when he kept insisting, [she] thought maybe [her] younger son might have taken [them] or had something to do with it. [She] wasn't too sure. [She] just told him that. And he ran upstairs to [the son]'s bedroom."

Plaintiff testified she "ran behind [defendant] thinking that he might beat [the son] or something so [she] tried to go right behind him but he locked the door so [she] couldn't enter the [son's] bedroom." Defendant eventually exited the son's bedroom and went into the bathroom, which is connected to a second child's bedroom. Plaintiff stated that defendant "tried to push me out of the bathroom away from them because I kept knocking at the door . . . I wouldn't

leave the room and he pushed me, holding my neck, . . . and then he hit me in the back and pushed me out of that room." Plaintiff testified defendant hit her with an open hand on her upper back. He would not let plaintiff take her phone out of her pocket, twisted her fingers, and grabbed the phone away from her. Plaintiff ran outside, went to a neighbor's house, and called the police.

Defendant cross-examined plaintiff and testified on his own behalf. He claimed that after plaintiff suggested their son might have the keys, "I ran up the stairs. I was easily going to run for exercise so I ran up the stairs. I was getting late. [Plaintiff] perceived it as rushing and then I went upstairs." Defendant further testified:

> I went upstairs for two reasons: one, I could get the key—I wanted to take the Volvo and go. [T]wo, my son was doing something morally wrong, taking the keys away without speaking or resolving with me. So, I wanted to have a father/son polite conversation with him, so I was standing at the door which is ten feet away, maybe [twelve], and I closed the door because he always wants it closed for allergy reasons. So he was standing . . . inside the bedroom, and then [plaintiff] started panicking. She thought I'm going to hurt my son.

Defendant described plaintiff as "paranoid," explaining he held the door handle because she "was on the other side so she was pulling, I was holding it

4

back . . . I didn't want the situation between me and my son [to] become anxious so I stop with that.  I open the door handle and she was on the other side."

Defendant further testified that he wanted to go into the other room to speak to the second child, who threatened to call 911.  Defendant added that he then "moved rapidly through the middle room.  [Plaintiff] was already off balance because of the situation and we ended up pulling on the doors . . . so we had some skirmish."  Defendant denied anything physical happened, describing the "skirmish" as "meaning I was way faster than her to that room between [the son's] room and [the other child's] room."

The Family Part judge found plaintiff was "reasonable," "calm," and "credible," describing her testimony as "consistent and believable."  The judge determined that her "testimony accurately reflected the allegations that were in the complaint."

After noting the discrepancies in the parties' versions of the events leading up to the physical altercation, the judge made the following specific findings:

> So, the testimony is, [plaintiff] attempted to get into the room, couldn't, tried to go through another door and couldn't.  And at some point, as the parties passed going, I guess, into their other son's room, I think [defendant] called it a skirmish.  But . . . I mean the clear testimony from [plaintiff] was that she was grabbed in the back of the neck and pushed and hit in the back and her hair was pulled . . . .

A-0543-23

Right, so as the testimony was that she was that she was grabbed by the neck, pushed, hit over body, hit a wall in the, I guess, somewhere in the bathroom. She stumbled, she said she had red marks on the back of her neck and her back. I couldn't tell from the photographs. I mean, she said that . . . her fingers were twisted because he tried to get the phone away.

I do see from one of the pictures there might be a red mark on the middle finger. It's not too pronounced. I certainly don't see anything on the back, so I don't . . . put too much weight on the photographs of the fact that I guess a police officer took photographs.

Next, the judge assessed defendant's testimony:

But I didn't hear [sic] a lot of testimony from [defendant] other than the fact that there was a skirmish. I didn't hear much on cross[-]examination or testimony of [defendant] or not—I didn't see—I didn't hear anything on cross[-]examination that got [plaintiff] to retract her statement that her neck was grabbed or that she was pushed or . . . that he attempted to take the phone away from her. I didn't see anything that contradicted that or caused me to believe that, you know, that in fact didn't happen.

The judge also considered testimony from both parties concerning prior allegations of domestic violence. The judge determined an FRO was needed, concluding:

But, based upon [plaintiff's] testimony and her continued testimony upon cross[-]examination and then considering [defendant's] testimony, I find that the predicate act for assault was proven and I find that proven because I believe [plaintiff's] testimony was credible. I believe that . . . there was a struggle. I

6

believe that she was grabbed and pushed. I do believe that . . . there was an attempt to pry the phone from her hand.

And certainly, taking the past allegations of domestic violence and qualifying this last incident and taking it all together in perception, I certainly believe that she feels she is in need of a [FRO] to protect her in the future and to prevent future acts of domestic violence.

So, I find the predicate act of assault under 2C:12-1 was established by [plaintiff] by a preponderance of the evidence, which is more likely than not that it—don't have to find it beyond the reasonable doubt. This isn't a criminal matter. I'm just finding that it's more likely than not that it happened. And . . . that statute says attempts to cause, purposely, normally or recklessly causes bodily injury to another. Which she states that she had red marks and chin up against the wall and—or negligently causes bodily injury to another.

I also find that the second prong, specifically in . . . Silver v. Silver, 387 N.J. Super. 112 [(App. Div. 2006)], that [plaintiff] is in fear of her safety and . . . the restraining order is necessary to protect [plaintiff], the victim, from immediate danger and possible future abuse.

So, I find that both prongs in the Silver case, the predicate act of domestic violence and the necessity for a restraining order have been met. And specifically I also cite, [Corrente v. Corrente], 281 N.J. Super. 243 [(App. Div. 1995)]. When I look at the past acts of alleged past active allegations of domestic violence, we use those to qualify her perceptions and what's happened here. I certainly can see why she feels that a restraining order is necessary.

This appeal followed. Defendant raises the following contentions for our consideration:

POINT I

THE TRIAL COURT ERRED BECAUSE ITS FACTUAL FINDINGS WERE MANIFESTLY UNSUPPORTED AND INCONSISTENT WITH TESTIMONY AND EVIDENCE.

A. "Chin up against the wall."

B. "Red Marks."

POINT II

THE TRIAL COURT ERRED BY CONSIDERING ALLEGATIONS OF PRIOR ACTS OF DOMESTIC VIOLENCE WHICH WERE BARRED BY THE DOCTRINE OF COLLATERAL ESTOPPEL AS THEY WERE PREVIOUSLY DISMISSED ON THE MERITS AFTER ADJUDICATION. THE TRIAL COURT FURTHER ABUSED ITS DISCRETION BY FAILING TO PROVIDE [DEFENDANT] THE OPPORTUNITY TO CROSS-EXAMINE HIS ACCUSER OR OTHERWISE DEFEND THESE PRIOR ACT ALLEGATIONS.

A. The Trial Court's Failure to Preclude Allegations Barred by Collateral Estoppel.

B. The Trial Court's Abuse of Discretion in Failing to Provide [Defendant] the Opportunity to Cross-Examine or Otherwise Defend the Prior Act Allegations.

8

THE TRIAL COURT'S DETERMINATION THAT A RESTRAINING ORDER WAS NECESSARY WAS CONCLUSORY AND NOT ANCHORED IN SPECIFIC FINDINGS OF FACT AND AN EVALUATION OF FACTORS SET FORTH IN N.J.S.A. 2C:25- 29(A)(1) TO (6).

II.

The scope of our review of a domestic violence FRO is limited. C.C. v. J.A.H., 463 N.J. Super. 419, 428 (App. Div. 2020). Appellate courts "accord substantial deference to Family Part judges, who routinely hear domestic violence cases and are 'specially trained to detect the difference between domestic violence and more ordinary differences that arise between couples.'" Ibid. (quoting J.D. v. M.D.F., 207 N.J. 458, 482 (2011)); see also S.K. v. J.H., 426 N.J. Super. 230, 238 (App. Div. 2012). Findings by a trial court "are binding on appeal when supported by adequate, substantial, credible evidence." T.M.S. v. W.C.P., 450 N.J. Super. 499, 502 (App. Div. 2017) (quoting Cesare v. Cesare, 154 N.J. 394, 411-12 (1998)). Stated another way, we do not disturb a court's findings unless those findings are "so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Cesare, 154 N.J. at 412 (quoting Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 484 (1974)). However, we do not accord

such deference to the trial court's legal conclusions, which we review de novo. C.C., 463 N.J. Super. at 428-29.

When determining whether to issue an FRO pursuant to the PDVA, a court must make two separate determinations as explained in Silver, 387 N.J. Super. at 125-27. First, the court "must determine whether the plaintiff has proven, by a preponderance of the credible evidence, that one or more of the predicate acts set forth in N.J.S.A. 2C:25-19(a) has occurred." Id. at 125. Second, if a court finds a predicate act was committed, "the judge must determine whether a restraining order is necessary to protect the plaintiff from future danger or threats of violence." D.M.R. v. M.K.G., 467 N.J. Super. 308, 322 (App. Div. 2021).

In Silver, we explained "the commission of any one of the predicate acts enumerated in [the PDVA] does not automatically warrant issuance of a domestic violence restraining order. . . ." 387 N.J. Super. at 124. In R.G. v. R.G., we reaffirmed that principle, explaining that "the trial court must find a predicate offense and also find a basis, upon the history of the parties' relationship, to conclude the safety of the victim is threatened and a restraining order is necessary to prevent further danger to person or property." 449 N.J. Super. 208, 224 (App. Div. 2017); see also Corrente, 281 N.J. Super. at 248

10

("[T]he drafters of the law did not intend that the commission of any one of these acts automatically would warrant the issuance of a domestic violence order.").

The second prong of the <u>Silver</u> two-part test "reflects the reality that domestic violence is ordinarily more than an isolated aberrant act and incorporates the legislative intent to provide a vehicle to protect victims whose safety is threatened.  This is the backdrop on which defendant's acts must be evaluated."  <u>R.G.</u>, 449 N.J. Super. at 229 (citing <u>Corrente</u>, 281 N.J. Super. at 248).

III.

We first address defendant's contention that the trial judge "erred because [the judge's] factual findings were manifestly unsupported and inconsistent with testimony and evidence."  Specifically, defendant challenges the judge's finding that plaintiff "had red marks and chin up against the wall" in finding the predicate act of assault.

Defendant is correct there is no direct evidence in the record that plaintiff's chin was pushed up against the wall.  However, there is sufficient evidence to support the judge's finding that defendant held plaintiff by the back of her neck and pushed her into wall.  That conduct constitutes the predicate act of assault. <u>See</u> <u>Cesare</u>, 154 N.J. at 412.  <u>See also</u> <u>MacKinnon v. MacKinnon</u>, 191 N.J. 240,

254 (2007) (quoting Cesare, 154 N.J. at 412) ("[D]eference is especially appropriate 'when the evidence is largely testimony and involves questions of credibility.'").

Aside from being pushed into a wall, plaintiff testified that defendant struck her upper back with an open hand and twisted her fingers while prying the phone from her hand. These acts also constitute an assault. Having determined that plaintiff's testimony was credible, we have no basis upon which to second guess the judge's finding that plaintiff proved by a preponderance of the evidence that defendant committed a simple assault during the physical struggle.

IV.

We next address defendant's contention the trial judge improperly relied on past acts of domestic violence that were adjudicated in trials that did not result in the issuance of an FRO. Specifically, defendant argues the trial judge "erred by considering allegations of prior acts of domestic violence which were barred by the doctrine of collateral estoppel as they were previously dismissed on the merits after adjudication."

N.J.S.A. 25-29(a)(1) instructs courts to consider "[t]he previous history of domestic violence between the plaintiff and defendant, including threats,

harassment and physical abuse" when determining "the necessity of ordering a restraining order." In this instance, the trial judge considered and relied upon the past allegations of domestic abuse to support the finding defendant "is in fear of her safety and the restraining order is necessary to protect [her] from immediate danger and possible future abuse."

The doctrine of collateral estoppel prevents the re-litigation of issues formerly adjudicated and fully disposed of. Barker v. Brinegar, 346 N.J. Super. 558, 565-66 (App. Div. 2002). The notion of judicial efficiency prevents the duplication of lawsuits with the same issues, the same parties, and the same witnesses. Cogdell v. Hosp. Ctr. at Orange, 116 N.J. 7, 26 (1989); see also State v. Gonzalez, 75 N.J. 181, 186 (1977) (explaining that collateral estoppel bars re-litigation of any issue decided in a prior action).

For collateral estoppel to apply, the issues must be identical to the ones presented in the prior proceedings, the issues must have been actually litigated in the prior proceeding, the court must have entered a final judgment, the issues raised in the new complaint must have been essential to the prior judgment, and the party against whom collateral estoppel is asserted must have been a party in the earlier proceeding. Olivieri v. YMF Carpet, Inc., 186 N.J. 511, 521 (2006).

A-0543-23

In <u>T.M. v. J.C.</u>, 348 N.J. Super. 101, 106 (App. Div. 2002), we held that conduct rejected as a basis for an FRO in a prior action may in some circumstances be considered in connection with a subsequent domestic violence complaint based on new conduct. We explained:

> Because the matter is remanded for findings of fact, we comment on the extent to which the judge can rely on evidence adduced at the prior proceeding. Depending on the nature of that evidence, the judge may or may not be able to consider it in reaching his decision on the present complaint because the first action was dismissed. A dismissal on the merits after adjudication usually determines that a plaintiff's proofs in a domestic violence action were not sufficient to constitute domestic violence. <u>See</u> <u>J.F. v. B.K.</u>, 308 N.J. Super. 387 (App. Div. 1998) (applying res judicata and collateral estoppel as a bar to relitigation of allegations of domestic violence previously decided adversely to a plaintiff in a domestic violence hearing). However, an individual act previously rejected as insufficient to constitute domestic violence may take on greater significance because the act is later repeated in a manner that may amount to a course of conduct prohibited by N.J.S.A. 2C:33-4(c) and/or N.J.S.A. 2C:12-10(b). In such instance, the prior act may be considered along with the new conduct in determining whether a plaintiff has established domestic violence based on a subsequent complaint. If not, it may be barred under principles of res judicata.
>
> [<u>Ibid.</u>]

Turning to the matter before us, plaintiff had previously filed three other domestic complaints against defendant, none of which resulted in an FRO. A

14

complaint filed in late January 2023 alleged that after filing for divorce, defendant "verbally and mentally abused her," threatened to destroy all her property, prevented her from using the family car, and poured water on her bed. Plaintiff voluntarily dismissed that complaint, and therefore, it was not adjudicated on the merits. See Olivieri, 186 N.J. at 521. Plaintiff claims the two other domestic prior domestic violence complaints were tried to completion and dismissed by the trial courts.[2]

The trial judge acknowledged that those two prior domestic violence cases did not result in the issuance of an FRO. Furthermore, the judge did not use the parties' history of domestic violence to support his finding that defendant committed the predicate act of assault. Rather, the judge considered the past history in the context of determining whether plaintiff feared for her safety. The judge explained:

> I don't know what happened in the prior TROs. I don't know, maybe there weren't any predicate acts, and it seems like you people have been trying to work on your marriage dynamic for a long time, which is also evidence, problems I guess the past, or evidence by

---

[2] We note that plaintiff has not provided us with the transcripts for those proceedings or moved to expand the record to include them in this appeal. See T.M., 348 N.J. Super. at 106 ("Even if we were willing to conduct our own independent review of the record, we could not resolve the question because we do not have a transcript of the prior proceeding.").

> [Exhibit] D-6, where there was certain goals that were written down to try to make improvements.
>
> To me just, only prove more that she was—she felt that she was in danger or her children were in danger, but, you know, something was happening so, I find that she's met her burden.

We are not persuaded the judge erred in considering the prior allegations to show the nature of the relationship between the parties during the pendency of divorce proceedings. Nor are we persuaded by defendant's argument that "[e]ven if the above prior acts were not barred by the doctrine of collateral estoppel, the [t]rial [c]ourt abused its discretion by limiting [plaintiff's] efforts to cross-examine [defendant] or otherwise defend against these prior act allegations." Specifically, defendant contends the judge "cut him short, directing him to focus on the alleged predicate act of this case only, and indicating disinterest in the prior acts."

Trial courts are afforded broad discretion in controlling cross-examination. State v. Jenewicz, 193 N.J. 440, 467 (2008); State v. Hockett, 443 N.J. Super. 605, 619 (App. Div. 2016). Additionally, N.J.R.E. 611(b) provides that "[c]ross-examination should not go beyond the subject matter of the direct examination and matters affecting the witness' credibility. The court may allow inquiry into additional matters as if on direct examination."

16

Here, the trial court did not abuse its discretion in controlling plaintiff's cross-examination of defendant. See Jenewicz, 193 N.J. at 440. Furthermore, defendant's related contention that the judge was "disinterested" in the allegations in the prior complaints buttresses our conclusion that the unsubstantiated allegations were not used inappropriately in the present decision to issue an FRO. During defendant's cross-examination of plaintiff, the judge noted, "[n]o, I'm not concerned about the prior ones. I'm looking at the predicate act for this one. I'm looking at the testimony for September 2, 2023." The record clearly shows, moreover, the judge was aware that a trial court dismissed two of the prior TRO complaints as unsubstantiated. In sum, the judge did not violate the doctrine of collateral estoppel by acknowledging the parties' contentious relationship as the past domestic violence litigation has shown.

V.

Finally, we address defendant's contention that the judge's "determination that a restraining order was necessary was conclusory and not anchored in specific findings of fact and evaluation of factors set forth in N.J.S.A. 2C:25-29(A)(1) to (6)."

As we have noted, under the second prong of the Silver two-step analysis, the trial court must determine that a restraining order is necessary to provide

A-0543-23

protection for the victim.  Silver, 387 N.J. Super. at 126-27.  The court must assess "whether a restraining order is necessary, upon an evaluation of the fact[or]s set forth in N.J.S.A. 2C:25-29(a)(1) to -29(a)(6), to protect the victim from an immediate danger or to prevent further abuse."  J.D. v. M.D.F., 207 N.J. 458, 475-76 (2011) (quoting Silver, 387 N.J. Super. at 127).  This determination entails an evaluation of:

> (1) The previous history of domestic violence between the plaintiff and defendant, including threats, harassment and physical abuse;
>
> (2) The existence of immediate danger to person or property;
>
> (3) The financial circumstances of the plaintiff and defendant;
>
> (4) The best interest of the victim and any child;
>
> (5) In determining custody and parenting time the protection of the victim's safety; and
>
> (6) The existence of a verifiable order of protection from another jurisdiction.
>
> [N.J.S.A. 2C:25-29(a).]

See also Cesare, 154 N.J. at 401.

The list of factors is not exhaustive.  See Cesare, 154 N.J. at 401-02.  Nor are the statutory factors mutually exclusive; facts may be relevant to multiple

A-0543-23

factors. Furthermore, we emphasize that, especially when physical violence and not just verbal abuse is involved, "the second determination—whether a domestic violence restraining order should be issued—is most often perfunctory and self-evident." Silver, 387 N.J. Super. at 127.

Although the judge in this instance did not address each statutory factor, we are satisfied he adequately evaluated plaintiff's request for the protection of an FRO. Plaintiff testified that she was in "fear" of her safety because "the physical, mental and verbal abuse has been going on for several years." She also testified as to defendant's "very bad anger issues." As we have noted, the judge found plaintiff to be credible. We add the judge appropriately considered the parties' living situation noting, "[i]t's clear there's a lot of friction in this house. It's clear that . . . some things have happened in the past and these parties are going through a divorce now and they certainly shouldn't be living together." See N.J.S.A. 2C:25-29(a)(2), (4).

Considering all relevant circumstances in context with the non-exhaustive list of statutory factors, we see no abuse of discretion to warrant overturning the FRO. To the extent we have not specifically addressed them, any remaining arguments raised by defendant lack sufficient merit to warrant discussion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

20